PEOPLE v KENT

Docket No. 81371. Submitted June 4, 1986, at Grand Rapids. Decided February 18, 1987.

Donald W. Kent, following a jury trial in the Isabella Circuit Court, was convicted of arson of a dwelling house and involuntary manslaughter relating to a fire at Larry Harvey's trailer home, in which Harvey suffered fatal injuries. Defendant was subsequently convicted of being an habitual offender, third offense, and the trial court, Paul F. O'Connell, J., imposed a sentence of from twenty to thirty years in prison. Defendant appealed, raising several issues.

The Court of Appeals *held:*

1. Defendant's right to effectively cross-examine three prosecution witnesses was abridged by the trial court's refusal to permit defense counsel to impeach the witnesses with evidence of their prior convictions. While a defendant's right to confront and to cross-examine his accusers is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process, the trial court in this case abused its discretion in refusing to conduct a hearing on the admissibility of evidence of the witnesses' prior convictions during the course of the trial on the basis that conducting such a hearing would unsettle the trial court's schedule in managing the lengthy trial.

2. The case against defendant was based solely on circumstantial evidence introduced through the testimony of the three unimpeached witnesses and other witnesses. The credibility of these witnesses was an important factor in the jury's verdict,

REFERENCES

Am Jur 2d, Criminal Law §§ 956 *et seq.*

Am Jur 2d, Evidence §§ 320 *et seq.,* 708 *et seq.*

Am Jur 2d, Trial §§ 1000-1004.

Cross-examination of character witness for accused with reference to particular acts or crimes—modern state rules. 13 ALR4th 796.

Effect of prosecuting attorney asking defense witness other than accused as to prior convictions where he is not prepared to offer documentary proof in event of denial. 3 ALR3d 965.

and the admission of evidence of the witnesses' prior convictions could have caused the jury to disbelieve their testimony.

3. The trial court erred in ruling that the testimony of defendant's father-in-law, during which the father-in-law related that on the night' and at the scene of the fire he had heard his daughter, defendant's wife, accuse defendant of starting the fire, was admissible under the excited utterance exception to the hearsay rule. One of the requirements for the admission of an excited utterance is that the declarant appear to have had an opportunity to personally observe the matter of which he speaks. In this case, there was no evidence that defendant's wife had personal knowledge that defendant set the fire.

4. No error requiring reversal arose from communications between the court clerk and the jury during its deliberations. The communications related exclusively to the jury's meal orders, involved nothing which was a subject of the deliberations, and thus resulted in no prejudice to defendant. Additionally, the trial court apprised the parties of the communications and defendant raised no objection after he was informed of the fact.

5. Defendant was not denied the effective assistance of counsel at the pretrial hearing held to determine whether his statements to the police were voluntary. Defendant could not show that, but for counsel's mistake, the result would have been different, inasmuch as defendant did not claim that his statements were involuntary.

6. The trial court did not, as defendant claimed, infringe on his right to present a defense, which would have suggested that someone other than defendant had set the fire in this case, by ruling to exclude evidence of three similar fires. Evidence tending to incriminate another is admissible if it is competent and confined to substantive facts which create more than a mere suspicion that another was the perpetrator. In this case, the trial court correctly ruled that evidence of the other fires was too remote to be probative.

7. A defendant's statutory right to be present during his trial includes the right to be present at any jury view. While defendant in this case did not request that he be present during the view, the record did not disclose that defendant was informed of his right to be present. If a defendant does not desire to attend or is willing to waive the jury view, the better practice is to place such on the record.

8. The trial court's preliminary instructions on the quantum of proof necessary to reach reasonable doubt were misleading

and should be modified, but, based on the entire record, the court's closing instruction correctly apprised the jury on that score.

9. The trial court also apparently erred when it instructed the jury that it could use evidence of prior inconsistent statements not only for impeachment purposes but also as proof of the elements of the crime charged.

10. The trial court should not have deleted paragraph (7) of the instructions on circumstantial evidence, CJI 4:2:01.

11. Certain remarks by the prosecutor at closing argument, while not objected to and which could have been cured by a cautionary instruction to the jury, were improper.

Reversed.

1. CRIMINAL LAW — EVIDENCE — WITNESSES — IMPEACHMENT — PRIOR CONVICTIONS — RULES OF EVIDENCE.

The credibility of a witness may be attacked by using evidence of conviction of a felony or of a crime involving theft or dishonesty, if the trial court determines that the probative value of such evidence outweighs its prejudicial effect and articulates on the record the factors the court considered in making its determination (MRE 609[a]).

2. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT OF CONFRONTATION.

A defendant's right to confront and to cross-examine his accusers is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process; however, its denial or significant diminution calls into question the ultimate integrity of the fact-finding process and requires that the competing interests being accommodated be closely examined.

3. CRIMINAL LAW — TRIAL — JUDGES — WITNESSES — IMPEACHMENT.

A trial judge, while having a certain latitude in controlling proceedings at trial, abuses his discretion where he infringes upon a defendant's right to effective cross-examination by not allowing the defendant to impeach such witnesses through use of evidence of their prior convictions on the basis that to conduct a hearing, regarding the admissibility of such evidence, during the course of the trial, would unsettle a schedule the court had adopted to manage trial proceedings (MCL 768.29; MSA 28.1052).

4. CRIMINAL LAW — EVIDENCE — HEARSAY — EXCITED UTTERANCE — RULES OF EVIDENCE.

Admission of hearsay testimony under the excited utterance

exception to the rule against hearsay requires that the declar-
ant appear to have had an opportunity to personally observe
the matter of which he speaks (MRE 803[2]).

5. CRIMINAL LAW — JURY — DELIBERATION OF JURY — COMMUNICA-
   TION WITH JURY.
   Communications between a court employee and a jury during its
   deliberations limited to the jury's meal orders did not result in
   error requiring a new trial or in prejudice to the defendant.

6. CRIMINAL LAW — EVIDENCE — INCRIMINATING ANOTHER INDIVID-
   UAL.
   Evidence tending to incriminate another is admissible if it is
   competent and confined to substantive facts which create more
   than a mere suspicion that another individual was the perpe-
   trator.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Joseph T. Barberi,* Pros-
ecuting Attorney, and *J. Ronald Kaplansky,* Assis-
tant Attorney General, for the people.

State Appellate Defender (by *Susan J. Smith*),
for defendant on appeal.

Before: SULLIVAN, P.J., and R. M. MAHER and
M. G. HARRISON,* JJ.

M. G. HARRISON, J. On the night of October 17,
1983, Larry Harvey died as a result of a fire at his
trailer. Defendant, whose wife Terri Sue was re-
portedly having an affair with Harvey, was
charged with arson and felony murder. After a
jury trial, which spanned almost three weeks and
included testimony from thirty-nine prosecution
witnesses, defendant was convicted of arson of a
dwelling house, MCL 750.72; MSA 28.267, and
involuntary manslaughter, MCL 750.321; MSA
28.553. Defendant was subsequently convicted of
being an habitual offender, third offense, and was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sentenced to from twenty to thirty years in prison. Defendant appealed and we reverse.

The prosecution's case was based on circumstantial evidence, including evidence that the fire was not an accident and must have been set; testimony of defendant's prior threats of physical violence against decedent Harvey; evidence of defendant's whereabouts on the evening of October 27, which suggested that defendant would have had time to set the fire before he appeared at his mother's house, spotted the fire, and reported it; and evidence of his conflicting statements to the police concerning his whereabouts that evening. Defendant was represented by two attorneys who called no witnesses. The defense theory was that the prosecution had not sustained its burden of proving that the fire was arson or that defendant had set it.

Defendant first asserts that the trial court erred in refusing to permit defense counsel to impeach three prosecution witnesses with evidence of their prior convictions. Defense counsel filed a timely motion, in accordance with the trial judge's cut-off date for motions, for the prosecutor to provide him with the criminal records of res gestae witnesses. One week before trial, at the hearing on the motion, the prosecutor stated that he did not have the information and had no intention of obtaining it. The court ruled that it would not order the prosecutor to obtain the information and that it would determine the admissibility of evidence of any convictions at trial. Defense counsel responded, "We have no objection to it being conducted at the time that the witness is called." The issue was next addressed two days into the trial when defense counsel requested a hearing to determine the admissibility of evidence of the witnesses' criminal convictions. The court decided to hear the

motion immediately. Defense counsel named three witnesses and related their alleged convictions. The prosecutor disputed the accuracy of the convictions as stated by the defense. The court took the matter under advisement with the direction that defense counsel was to obtain certified records of the witnesses' convictions and that the court would decide the admissibility issue before the witnesses were to testify.

When defense counsel, on cross-examination, attempted to impeach the first of the three witnesses with evidence of his prior convictions, the prosecution objected that the court had never ruled that this would be permissible. Defense counsel responded that he understood that if he obtained the certified copies, he could impeach the three witnesses. The trial judge admonished defense counsel for attempting to impeach without first obtaining a favorable ruling. The court declared that it was "far too late" to rule on the admissibility of the impeachment evidence when the witness was already on the stand. The court then stated that it was exercising its discretion in not allowing impeachment of any of the witnesses with evidence of their prior convictions. The court later permitted defense counsel to make an offer of proof of the witnesses' prior convictions, all of which included felonies or theft offenses.

Defendant contends that the court's ruling was an abuse of discretion which denied him his right to confront and cross-examine his accusers. The credibility of a witness may be attacked by using evidence of conviction of a felony or of a crime involving theft of dishonesty, if the court determines that the probative value of this evidence outweighs its prejudicial effect and articulates on the record the factors considered in making the determination. MRE 609(a). In this case, the judge

did not weigh the probative value against the prejudicial effect, but excluded the evidence because, in his opinion, it was too late to consider the issue when the witness was already on the stand.

A defendant's right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *Chambers v Mississippi,* 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297 (1973). However, its denial or significant diminution calls into question the ultimate integrity of the fact-finding process and requires that the competing interests be closely examined. *Id.* In this case, it appears that the competing interest was the trial court's desire to adhere to a schedule to manage this lengthy trial. A trial judge does have a certain latitude in controlling the trial proceedings. MCL 768.29; MSA 28.1052; *People v Rogers,* 60 Mich App 652, 657; 233 NW2d 8 (1975).

Nevertheless, we do not think defendant's interest in impeaching the credibility of three key prosecution witnesses with evidence of their prior convictions should yield to a schedule so strict that a brief hearing on this issue could not be afforded. Defendant first raised the impeachment issue prior to trial. It was the judge who postponed the decision. Apparently there was a misunderstanding as to whether another hearing and ruling was required. It appears, however, that, first, what occurred was hardly a substantial departure from what the trial court must have expected in postponing the decision yet wanting to rule in advance of the witnesses' testifying; and, second, that the prosecutor was less than helpful in resolving the issue in a timely fashion by his refusal from the outset to obtain a copy of what was more readily accessible to him.

The prosecution maintains that the testimony of the three unimpeached witnesses, while damaging, was essentially cumulative. We disagree. While several witnesses testified that defendant's wife and the decedent were having an affair, Timothy Johnson was the only witness who testified that defendant had offered to pay Johnson, on the night before the fire, to "take care of Larry Harvey." William Phelps was the only witness who testified to having heard defendant, on the night of the fire, saying, "Goddamit, I didn't mean it to happen this way." Cecil Langlois was the only witness who testified that defendant had been hitchhiking back to a bar when he discovered that the trailer was on fire.

The prosecution used this testimony to show that defendant had given conflicting versions of his actions that night. The prosecution's case was based solely on the circumstantial evidence offered by these and other witnesses. Credibility was an important factor in this case. Admission of evidence of the prior convictions of Johnson, Phelps, and Langlois could have caused the jury to disbelieve their very damaging testimony. *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982). We conclude that defendant's right to effective cross-examination was abridged by the court's refusal to permit counsel to impeach these key witnesses with evidence of their prior convictions.

Although this issue is of sufficient magnitude to require reversal, we will address certain other allegations of error to assist the trial court in the event of retrial.

Defendant maintains that crucial hearsay was admitted. Defendant's father-in-law testified that, when he arrived at the scene of the fire, he saw defendant and his wife hollering at each other and visibly upset. Over objection, he testified that,

"Terri Sue was saying you burnt the trailer; and Donny was saying I swear to God, I did not burn the trailer." The court permitted evidence of Terri Sue's statement as an excited utterance exception to the rule against hearsay. MRE 803(2). Terri Sue did not testify because defendant claimed his spousal privilege. MCL 600.2162; MSA 27A.2162.

There was no evidence that Terri Sue had personal knowledge that defendant set the fire. Witnesses testified she did not arrive until the fire was well under way. One of the requirements for the admission of an excited utterance is that the declarant appear to have had an opportunity to personally observe the matter of which he or she speaks. 6 Wigmore, Evidence (Chadbourn rev), § 1751, p 222; McCormick, Evidence (3d ed), § 297, p 858; *Miller v Keating,* 754 F2d 507, 511 (CA 3, 1985). Michigan authority on this issue is sparse. Cf. *People v Oliver,* 111 Mich App 734; 314 NW2d 740 (1981). However, case authority from jurisdictions having addressed this issue supports this approach. See *Ungefug v D'Ambrosia,* 250 Cal App 2d 61; 58 Cal Rptr 223 (1967); *Spears v State,* 272 Ind 634; 401 NE2d 331 (1980); *Commonwealth v Stetler,* 494 Pa 551; 431 A2d 992 (1981); *Watson v State,* 387 P2d 289, 291 (Alaska, 1963). The burden of establishing perception rests with the proponent of the evidence. *Miller, supra.* It was thus error to admit this hearsay as an excited utterance.

The erroneous admission of hearsay testimony is harmless where the same facts are shown by competent evidence. *People v Slaton,* 135 Mich 328, 338; 354 NW2d 326 (1984), lv den 422 Mich 854 (1985). However, in this case there was no other evidence directly linking defendant to the fire. The only analogous evidence was Phelps' testimony that defendant had said he did not mean it to happen this way, and Phelps was one of

the witnesses whose credibility was not allowed to be impeached with evidence of his prior larceny convictions.

The bothersome aspect of Terri Sue's statement is that the jury could well have concluded that Terri Sue had some special information about the fire which led her to say what she did, but which the jury could not hear directly because she could not testify.

Defense counsel urges us to find error requiring reversal from the fact that the court clerk took meal orders from the jury during deliberations, arguing the sanctity of the jury room was violated. The judge who became aware of the situation reported the incident to the attorneys who indicated they had spoken with the clerk and were satisfied that no adverse consequences had transpired. Defense counsel also reported he had discussed the matter with defendant, who had no objection. Defendant asserts that the rule in Michigan is that an ex parte communication to the jury entitles defendant to a new trial without regard to defendant's ability to show prejudice. *People v Cain*, 409 Mich 858; 294 NW2d 692 (1980). This situation, however, we believe requires some analysis.

*Cain* adopted the dissenting opinion in *People v Cain*, 94 Mich App 644; 288 NW2d 465 (1980), which relied in large measure upon *People v Kangas*, 366 Mich 201; 113 NW2d 865 (1962), and *Zaitzeff v Raschke*, 387 Mich 577; 198 NW2d 309 (1972). In *Kangas*, the breach which occurred related to the giving of instructions to the jury behind closed doors after deliberations had begun. This was the situation in *Weidenhaupt v Hoelzel*, 254 Wis 39; 35 NW2d 207 (1948), relied upon in *Kangas. State v Cotter*, 262 Wis 168; 54 NW2d 43

(1952), cited in *Kangas,* likewise dealt with jury instructions.

The other cases relied on by the *Kangas* Court also presented situations far more egregious than that in the case before us. *Churchill v Alpena Circuit Judge,* 56 Mich 536; 23 NW 211 (1885), was a situation fraught with potential for prejudice: the jury had breakfast at a local hotel, conversed with others in the hotel, told someone that their vote stood ten to two, asked what the sentiment was outside, drank whiskey and other liquors, and openly discussed the case. In *People v Knapp,* 42 Mich 267; 3 NW 927 (1879), an officer remained in the jury room during deliberations, and in *People v Chambers,* 279 Mich 73; 271 NW 556 (1937), the officer was in and out of the jury room at least five times, once staying at least three minutes, and reporting to a detective that they had not yet reached a decision. All these situations created, or had a substantial potential for, prejudice, which explains why the courts in these cases made the comments quoted in *Kangas* to the effect that the trial must be free from even the appearance of prejudice and they must be "guarded against unlawful contact with the outside world."

*Cain* also relied on *Zaitzeff* in quoting "black letter" law from *Wilson v Hartley,* 365 Mich 188; 112 NW2d 567 (1961). *Wilson,* however, is hardly support for the proposition advanced, since no reversal resulted and the Supreme Court, in fact, approved a "no prejudice" rule. The Court stated:

> Although we do not condone such improper method of handling a jury trial, under the circumstances we are of the opinion that no prejudice resulted to plaintiff and that the situation does not constitute a just reason for reversal of the verdict and judgment. The authorities cited by appellant

do not apply to the facts presented in this case. [365 Mich 190.]

In subsequent cases relying on the *Kangas* rule to reverse, the communications with the jury again directly related to their deliberations: *People v Heard,* 388 Mich 182; 200 NW2d 73 (1972) (twenty-one exhibits delivered without request), *People v Zeegers,* 61 Mich App 546; 233 NW2d 76 (1975), lv den 395 Mich 807 (1975) (court officer instructed jury on what to consider as evidence), *People v Olson,* 66 Mich App 197; 238 NW2d 579 (1975), lv den 396 Mich 824 (1976) (judge entered jury room), *People v Washington,* 119 Mich App 373; 326 NW2d 514 (1982) (bailiff told jury that photos were not evidence and they could not have them), *Zaitzeff, supra* (judge and court reporter entered jury room to read witness' testimony). In each of these matters, the breach was of greater significance than the purely housekeeping matter involved here.

Broad rules of law designed to address especially egregious situations on occasion become petrified without additional analysis over periods of time. It makes little sense to have a rule so absolute that the potential result is reversal of an otherwise errorless trial because of an insignificant contact with a jury which does not even raise the concern of those who were present during the proceedings. Those who promulgate such rules would do well to consider the consequences of reversal of convictions where, despite clear instructions to the contrary, a juror suddenly appears at a secretary's desk and makes a request for water or to call a babysitter, or a juror knocks at the door and verbally requests certain exhibits, or a note is sent to a judge indicating how the voting stands. Is a court officer, when taking a jury to a meal, prohibited from verbally indicating the spending limits?

Little enough confidence exists today in our institutions without further perpetuating its erosion by an automatic rule applied to court personnel who are under oath to obey the law where nothing more is revealed than an incidental contact unrelated to the case itself. The judicial system must demonstrate some confidence in those who are entrusted with its well-being and, in fact, have little interest in the outcome of a matter, when there is no showing of prejudice (or, after scrutiny, even a hint of such).

Defendant asserts he was denied the effective assistance of counsel at the pretrial *Walker*[1] hearing held to determine whether his statements to the police were voluntary. We find no error in this regard. Under both state and federal tests, a defendant must show that, but for counsel's mistake, the result would have been different. See *People v Vicuna,* 141 Mich App 486, 497-498; 367 NW2d 887 (1985). Defendant has never claimed that his statements were involuntary, and, therefore, has not shown how the failure to cross-examine defendant's prior counsel was a mistake but for which the result would have been different.

Defendant claims the court infringed on his right to present a defense in ruling to exclude evidence of three other fires which occurred at approximately the time of the Harvey fire. The purpose of this evidence was to suggest that someone else also set the Harvey fire. Two of the fires were clearly not relevant. The only one which might have been was a fire at Timothy Johnson's girlfriend's trailer, which apparently occurred the same night as the Harvey fire. Johnson's girlfriend was also allegedly having an affair with Harvey. The trial court ruled that defendant could intro-

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

duce evidence that Johnson had the motive and opportunity to set the Harvey fire, and that he could produce two jail inmates to testify that they overheard Johnson say that he and two other prosecution witnesses set the Harvey fire. Defendant, however, offered no facts linking Johnson to the burning of his girlfriend's trailer.

We have found no Michigan cases addressing a rule concerning admissibility of other similar crimes to cast doubt on a defendant's guilt. Other jurisdictions have held that evidence tending to incriminate another is admissible if it is competent and confined to substantive facts which create more than a mere suspicion that another was the perpetrator. See, e.g., *Fortson v State,* 269 Ind 161; 379 NE2d 147 (1978); *People v Whitney,* 76 Cal App 3d 863; 143 Cal Rptr 301 (1978); *People v Luigs,* 96 Ill App 3d 700; 421 NE2d 961 (1981).

Without any facts suggesting that someone else set the other fire, there could be no more than a mere suspicion that it was the same person who set the Harvey fire and that that person was not defendant. In our opinion, the court did not abuse its discretion in determining that evidence of the other fire was too remote to be probative. *People v Vanderford,* 77 Mich App 370, 374; 258 NW2d 502 (1977).

We will briefly address the remaining issues: Defendants have a statutory right to be present during their trial which has been interpreted to include a jury view. *People v Mallory,* 421 Mich 229, 244-248; 365 NW2d 673 (1984). While, unlike the defendants in *Mallory* and its companion case, defendant did not request that he be present during the view, the record does not indicate that defendant was informed of his right to be present. Defense counsel's acquiescence after the fact does not remove the possibility of prejudice, since there

is no record of what actually transpired. If a defendant does not desire to attend or is willing to waive the jury view, the better practice is to place such on the record.

The trial judge's preliminary instructions on the quantum of proof necessary to reach reasonable doubt were misleading and should be modified, but, based on the entire record, the court's closing instructions correctly apprised the jury and instructions are to be read as a whole. The court also apparently erred when it instructed the jury that it could use evidence of prior inconsistent statements not only for impeachment purposes but also as proofs of the elements of the crime charged, although this may have been a typographical error in the transcript, of which there were many. Additionally, we see no reason why paragraph (7) of the instruction on circumstantial evidence, CJI 4:2:01, was omitted. We do not consider the case against defendant to have been strong. Cf. *People v Armentero,* 148 Mich App 120, 132; 384 NW2d 98 (1986).

While there was no objection to the prosecutor's remark in his closing argument that Larry Harvey's blood "cried out for vengeance" just as Abel's did after his brother Cain slew him, and a cautionary instruction could have cured any error, we register our disapproval of this form of argument. *People v Sutherland,* 149 Mich App 161, 166; 385 NW2d 637 (1985). The same is true of the prosecutor's suggestions that defense counsel was trying to mislead the jury with "fairy tales," "total misstatement of fact," "misleading statements," and "changing white to black."

Reversed.