NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0288n.06

No. 10-1591

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 22, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TONY BERRY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CARMEN PALMER, Warden, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |
| | | OPINION |

Before:  MARTIN, SILER, and DONALD, Circuit Judges.

**Bernice B. Donald**, Circuit Judge.  Petitioner Tony Berry was convicted of first-degree criminal sexual conduct and first-degree home invasion following a jury trial in the Montmorency County Circuit Court.  Berry filed a *pro se* petition for a writ of habeas corpus in the Eastern District of Michigan pursuant to 28 U.S.C. § 2254. The district court denied the petition.  For the following reasons we AFFIRM.

I.

Berry's convictions stem from the September 19, 2001 home invasion and sexual assault of Carrie Campbell ("Campbell"), a 90-year-old woman from Atlanta, Michigan.[1]  Campbell reported

---

[1]All facts are derived from the Michigan Court of Appeals decision in *People v. Berry*, No. 246430, 2005 WL 354583, *1-4 (Mich. Ct. App. Feb. 15, 2005).

that two men broke into her home and pushed her onto the bed. One of the men put his hand on her leg, but she pushed it away. The men decided to leave, but one of them threatened to return if she reported the incident to the police. After they left, Campbell discovered that fifteen one-dollar bills were missing from her purse.

Later that evening, a man forced the chain off Campbell's door and entered her home. Campbell confronted the man about the missing money. The perpetrator initially denied taking the money, but then went outside and returned with some money. He asked Campbell for a paper towel and instructed her to wipe his fingerprints off the money. The man then pushed Campbell onto her bed, exposed his genitals to her, and forced her to touch his penis. He forced her legs apart and touched her vagina with his tongue. During this incident, the man wore yellow rubber gloves. Before leaving Campbell's home, the perpetrator made Campbell promise not to report the incident.

The next day, Campbell reported the break-in and assault to the police. She was not able to identify the perpetrator but indicated that he was a broad man who was barefoot and smelled of alcohol. Upon leaving Campbell's residence, officers noticed a truck parked at a cabin next to Campbell's home. The truck was registered to Berry. Berry was not the owner of the cabin, but was staying there with the owner's permission.

Officers eventually searched the cabin and found a dollar bill and paper towels in the trash can, a few bottles of vodka, and rubber gloves. Two hairs were retrieved from the gloves. DNA testing revealed that the hairs belonged to Campbell. A hair was also found on the victim's bed; however, DNA testing did not produce a match to Berry.

In March 2002, Berry was arrested. He acknowledged that he was staying at the cabin near Campbell's home on the night of the incident. Berry claimed, however, that he had never been inside Campbell's home. While in custody, Berry admitted to being involved in a sexual assault of a ninety-six year old woman in 1978.

During pretrial hearings, Berry offered the testimony of Angela Englehart and Jason Bible to support his theory that a third-party, Larry Miller, had perpetrated the crimes. Trial counsel claimed that both would testify that Miller fit the victim's description, was absent before the assault, and knew of the crime before it had been reported. After hearing Bible's proffered evidence, the trial court concluded that his testimony was speculative and excluded it from evidence.

On April 2, 2003, Berry was found guilty of first-degree home invasion and first-degree criminal sexual conduct. He was sentenced as a habitual offender to consecutive terms of 35 to 60 years imprisonment for the sexual assault and 20 to 40 years for the home invasion.

Following his conviction and sentencing, Berry appealed to the Michigan Court of Appeals, asserting claims regarding the admission of other acts evidence, the right to present a defense, the use of jury questions, a request for DNA testing, and ineffective assistance of counsel. The Michigan Court of Appeals affirmed Berry's convictions. Berry then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. In 2006, Berry filed a *pro se* petition for a writ of habeas corpus in the Eastern District of Michigan, which he later withdrew so that he could exhaust additional claims in state court. Berry subsequently filed a motion for relief from judgment in the trial court, raising claims concerning the sufficiency of the evidence, the jury instructions, the

validity of his arrest, and the effectiveness of both his trial and appellate counsel. The state circuit court denied Berry's motion. Berry again appealed to the Michigan Court of Appeals, but the court denied the appeal for lack of merit. Berry then filed an application for leave to appeal with the Michigan Supreme Court, which was also denied.

After exhausting his state court claims, Berry instituted the present habeas petition in the Eastern District of Michigan. The district court denied Berry's habeas petition but granted Berry a certificate of appealability on the issues of ineffective assistance of counsel for failing to procure further DNA analysis of the unidentified hair and failing to investigate evidence of third-party guilt, as well as a claim that the trial court denied him the opportunity to present a defense.

## II.

On appeal of a denial of a petition for a writ of habeas corpus, we review the district court's legal conclusions de novo and its factual findings for clear error. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc). Our review of the state trial court's decision is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. *Id.*; 28 U.S.C. § 2254 (d). As amended, 28 U.S.C. § 2254 (d) states:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* The Supreme Court has determined that a decision of a state court is "contrary to" federal law when "the state court [] arrives at a conclusion opposite to that reached by this Court on a question of law or [] decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 364-65 (2000). An "unreasonable application" of federal law occurs when "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 365. A reviewing court may not grant relief simply because it determines that the relevant state court decision applied established federal law incorrectly; the application must also be unreasonable. *Id.*

## A. Ineffective Assistance of Counsel

Berry first asserts that he is entitled to habeas relief because his trial counsel was ineffective for failing to procure a DNA analysis of the unidentified hair found on the victim's bed. He contends that his trial counsel should have moved to have the unidentified hair compared to the state police DNA database and that had counsel done so, there is a reasonable probability that the hair would have matched a third-party, thereby casting doubt on Berry's guilt.

In *Strickland v. Washington*, the Supreme Court set forth a two-pronged test for determining whether one has received ineffective assistance of counsel. 466 U.S. 668, 687 (1984). First, the defendant must prove that the counsel's performance was deficient. Deficient performance occurs if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment with decision-making. *Id.* at 687, 689. Therefore, the defendant bears the

burden of rebutting the presumption that trial counsel acted "for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam).

Second, the defendant must demonstrate that he was prejudiced by counsel's deficient performance. This requires a showing that the counsel's errors were so serious that they deprived the petitioner of a fair trial or appeal. *Strickland,* 466 U.S. at 693. Under the prejudice prong of *Strickland*, the petitioner must show that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. We have recently determined that when ineffective assistance of counsel claims are reviewed under AEDPA deference, "the appropriate question for review is 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Donaldson v. Booker*, No. 11-1756, 2012 WL 5862467, at *7 (6th Cir. Nov. 19, 2012) (quoting *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011)).

Berry has not demonstrated that the district court lacked a reasonable basis for determining that his trial counsel satisfied *Strickland*'s deferential standard. We are not persuaded that trial counsel's performance was deficient because he failed to obtain DNA analysis of the unidentified hair found in the victim's bed. Berry has not overcome the presumption that trial counsel's decision was grounded in trial strategy. The record indicates that Berry's trial counsel was aware of the experts' reports regarding the DNA testing of the hair. Instead of pursuing further DNA testing, trial counsel chose to argue that the unidentified hair created reasonable doubt as to Berry's guilt. DNA testing established that the hair found on the victim's bed did not belong to Berry, and this fact was presented to the jury. Thus, further testing of the hair to cast doubt on Berry's guilt would have been

unnecessary. *Jackson v. Bradshaw*, 681 F.3d 753, 760 (6th Cir. 2012) (noting that counsel is not deficient where he "make[s] a reasonable decision that makes particular investigations unnecessary").

Even if trial counsel's performance was somehow deficient, Berry cannot show that but for his counsel's failure to procure further DNA analysis of the hair, the result of the trial would have been different. As noted by the Michigan Court of Appeals, the jury was presented with exculpatory evidence showing that the unidentified hair found in the victim's bed did not belong to Berry, and it nonetheless rendered a guilty verdict based on other evidence presented at trial. On appeal, Berry has offered no evidence to show that comparing the hair to samples in the state police DNA database would have produced a match resulting in competent evidence that a third-party committed the offenses. Hence, we cannot conclude that trial counsel's failure to procure further DNA analysis affected the outcome of the trial.

Berry argues that his trial counsel was also ineffective for failing to interview and present witnesses to establish third-party guilt. Berry submits that because his DNA was not found at the scene of the crime and because the victim did not identify him as the assailant, trial counsel should have investigated the possibility that Larry Miller actually committed the crimes. Although the Michigan Court of Appeals did not address this theory in its opinion, Berry raised the claim in his state court appellate brief, and thus we will address it.

Berry contends that trial counsel failed to investigate and interview several witnesses. He claims that Englehart and Bible were in possession of information that suggested that Larry Miller

was the actual perpetrator, and counsel's failure to personally interview these witnesses before trial

prevented trial counsel from effectively arguing third-party guilt. Indeed, counsel has a duty to make

reasonable investigations and failure to do so will result in "a violation of *Strickland's* performance

prong." *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (citing *Williams v. Taylor*, 529 U.S. 362,

395 (2000)).

The record indicates that Englehart and Bible were at a campsite located not far from the

victim's house on the night of the assault. Miller was also at the campsite and asked Bible if he had

heard about the home invasion and robbery of an older lady. Bible indicated that he had not heard

of the incident. Bible read about the incident in the newspaper a few days later. After seeing Miller

in jail several months later, Bible informed the police of Miller's remarks. The record further

indicates that Bible gave a description of Miller that was similar to the victim's description of her

assailant. Bible also indicated that Miller was a heavy drinker, went barefoot most of the time, and

was from Atlanta, Michigan.

Relying on this information, trial counsel filed a motion to compel discovery and

subsequently received from the police the written statements of Bible, Englehart, and Miller. Trial

counsel then subpoenaed the witnesses and proffered the testimony of Bible. Unlike in *Wiggins*, on

which Berry relies in his brief, counsel here used the information he received and sought to introduce

evidence that he believed was beneficial to his client. *See Wiggins*, 539 U.S. at 523. The fact that

the trial court ultimately excluded the testimony from evidence as "speculative," does not make

counsel's efforts unreasonable. As such, Berry has not shown that trial counsel failed the first prong

of *Strickland*.

Again, even if we assume that trial counsel's performance was deficient, Berry cannot show

prejudice. The testimony counsel attempted to proffer only stood to establish a *theory* of third-party

guilt. The record does not indicate that there was any direct evidence tying Larry Miller to the

crimes, and thus, as the trial court stated, the testimony was "speculative" at best. As a result, Berry

cannot establish prejudice. *See Hanna v. Ishee*, 694 F.3d 596, 619 (6th Cir. 2012).

Berry also contends that even if he cannot establish prejudice, he is entitled to an evidentiary

hearing in which he might demonstrate prejudice. Berry's request is precluded by the Supreme

Court's holding in *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). *Pinholster* limited review

under § 2254(d)(1) "to the record that was before the state court that adjudicated the claim on the

merits." *Id.* Even if an evidentiary hearing was held, under *Pinholster*, federal courts are prohibited

from considering newly discovered evidence as it pertains to a claim that was adjudicated on the

merits in state court. *Id.* Here, Berry's claims for ineffective assistance of counsel were presented

to the Michigan Court of Appeals, which denied relief. "When a federal claim has been presented

to a state court and the state court has denied relief, it may be presumed that the state court

adjudicated the claim on the merits." *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011). And

even though the Michigan Court of Appeals did not address Berry's argument regarding the failure

to investigate witnesses, the state courts had the *opportunity* to adjudicate the claim. *See Nali v.*

*Phillips*, 681 F.3d 837, 852 (6th Cir. 2012).  Accordingly, Berry is not entitled to an evidentiary

hearing and his claims for ineffective assistance of counsel do not warrant habeas relief.

### B.  Right to Present a Defense

Berry next argues that by excluding Bible's testimony, the trial court denied him the

opportunity to present a defense.  The right to present a defense is a well established right:

> The right to offer the testimony of witnesses, and to compel their attendance, if
> necessary, is in plain terms the right to present a defense, the right to present the
> defendant's version of the facts as well as the prosecution's to the jury so it may
> decide where the truth lies.  Just as an accused has the right to confront the
> prosecution's witnesses for the purpose of challenging their testimony, he has the
> right to present his own witnesses to establish a defense.  This right is a fundamental
> element of due process law.

*Washington v. Texas*, 388 U.S. 14, 19 (1967).  This right, however, is not unfettered and must "bow

to accommodate other legitimate interests in the criminal trial process."  *United States v. Scheffer*,

523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)).  "[S]tate and federal

rulemakers have broad latitude under the Constitution to establish rules excluding evidence from

criminal trials.  Such rules do not abridge an accused's right to present a defense so long as they are

not arbitrary or disproportionate to the purposes they are designed to serve."  *Id*. (internal quotations

omitted).

In *People v. Kent*, 404 N.W.2d 668 (Mich. Ct. App. 1987), the Michigan Court of Appeals

held that it is permissible to exclude evidence of third-party guilt where the evidence only amounts

to mere suspicion that someone other than the defendant committed the offense.  *Id*. at 674.  In this

case, the Michigan Court of Appeals used the same reasoning to uphold the trial court's exclusion

of Bible's testimony. This rationale is supported by the Supreme Court's decisions in *Scheffer* and

*Holmes v. South Carolina*, 547 U.S. 319 (2006). In *Holmes*, the Court explained that evidence is

properly excluded where the probative value is outweighed by factors such as undue prejudice,

confusion of the issues, or potential to mislead the jury. *Id*. at 326-27. *Holmes* reversed the South

Carolina Supreme Court, finding that the state supreme court's decision was arbitrary because in

excluding evidence of third-party guilt, it focused solely on the strength of the prosecution's

evidence of guilt instead of the probative value of the defense's proffered evidence. *Id*. at 329. The

petitioner in *Holmes* proffered evidence that, if believed, "squarely proved" that another person was

the perpetrator. *Id*. at 330. That is not the case here.

The cross-examination of Bible proceeded as follows:

| | |
|---|---|
| Prosecutor: | You indicated that you camped in the, on the same lake as this Larry Miller, correct? |
| Bible: | That's correct. |
| Prosecutor: | But you didn't camp right next to him? |
| Bible: | No Sir, No Ma'am. |
| Prosecutor: | So you have no idea whether he was at this campsite all night or whether he was gone do you? |
| Bible: | That's correct. |
| Prosecutor: | So you're just kind of speculating that he may have left? |
| Bible: | I tried to tell them, the Defense Attorney, that I really didn't know exactly what happened. All I said was, it was pretty peculiar to me that he would know about [the assault] before it came out in the papers, that's all. |

| Prosecutor: | But he could have heard it from somebody, because you weren't with him all the time, right? |
| Bible: | That's correct. |
| Prosecutor: | So you really don't have any idea. |
| Bible: | I have no eyewitness knowledge. |

In response to this testimony, the court determined that Bible could not testify because his testimony was "[t]oo highly speculative to admit to the jury as evidence" of third-party guilt. Trial counsel indicated to the court that he intended to also call Englehart as a witness but then decided against that after admitting to the court that her testimony would likely not be different from Bible's.

The aforementioned proffered testimony does not *squarely prove* that Miller could have committed the crimes. The *Gregory* rule, *State v. Gregory*, 16 S.E.2d 532, 534-35 (S.C. 1941), referenced in *Holmes,* and the rule in *Kent*, 404 N.W.2d at 793, both assert that evidence casting mere suspicion on another with no linking, substantive facts is not admissible. By their nature these rules rely on the probative value of proffered evidence before permitting exclusion. Indeed, *Holmes* held that exclusion of evidence establishing third-party guilt is "arbitrary" where it does not rationally serve the end that these rules were designed to further. *Holmes*, 547 U.S. at 331. It cannot be said that the exclusion of Bible's testimony was arbitrary where it does not tend to prove that Miller could have committed the crimes. The testimony is therefore not competently supported by facts, is speculative, and, as a result, the probative value is outweighed by the relevant factors.

It was neither contrary to nor an unreasonable application of clearly established federal law for the Michigan state courts to conclude that Bible's and Englehart's proffered testimony should be excluded. Accordingly, Berry's claim that the trial court infringed upon his right to present a defense does not warrant habeas relief.

III.

For the foregoing reasons, we AFFIRM the district court's denial of Berry's petition for a writ of habeas corpus.