# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ANTHONY RON TROMBINO IV,

      Defendant-Appellant.

UNPUBLISHED
December 8, 2015

No. 321838
Oakland Circuit Court
LC No. 2013-247193-FH

Before: MURRAY, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of domestic violence, third offense, MCL 750.81(4). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 22 months to 20 years' imprisonment. We affirm.

## I. FACTUAL BACKGROUND

Defendant and the victim met in the summer of 2012 and began dating immediately, with defendant moving into the victim's condominium. The relationship was tumultuous. Beginning in December 2012, the police were called to investigate multiple incidents of domestic violence, but the victim always failed to cooperate with the prosecution when it came time to press charges. Ultimately, during the summer months in 2013, their relationship was "on and off," and the victim and defendant were no longer living together.

The culminating event of their relationship took place around 6:30 or 7:00 a.m. on August 10, 2013, when defendant arrived at a house where the victim had spent the night. The defendant had his young daughter and the victim's young daughter with him, and he began banging on the door. After repeatedly opening and closing the door, the victim pushed defendant backwards away from the steps and threatened to call the police. At some point, while defendant was holding the victim, they tripped and fell to the ground. Defendant then held the victim down. The victim screamed for defendant to get off, but he refused. Defendant then slammed the victim into the ground, ripped out some of her hair, slammed her head into the ground, and tore her clothing. The victim ultimately bit defendant in order to get away. Finally, the police were called, and defendant was arrested.

At trial, defendant argued that he acted in self-defense, claiming that he was the victim during the incident. The jury found defendant guilty, and he now appeals.

-1-

## II. ADMISSION OF 911 CALL

Defendant first contends that the trial court erred in excluding under MCL 768.27c or MRE 803(2) a recording of a 911 call placed by Shane Clark, who is now married to the victim, on December 17, 2013, and that the exclusion of the 911 call violated his constitutional right to present a defense. In the 911 call, Clark purportedly states, among other things, that the victim "took the car, she stabbed me with a knife, bit my face.[1] She just got in trouble for this because her, uh, ex f-----g Tony Trombino, she did the same thing to him." We disagree.

## A. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion the trial court's decision to admit or exclude evidence." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "[A] trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. (footnotes omitted). Additionally, we review *de novo* "the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it." *Id*.

However, because defendant did not argue in the trial court that the exclusion of the 911 call violated his constitutional right to present a defense, this argument is unpreserved. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Accordingly, review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

To demonstrate such an error, the defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

## B. ANALYSIS

### 1. MCL 768.27c

---

[1] There is some dispute regarding whether Clark says "bit my face" or "didn't want to stay." Clark did not remember making the call, testifying outside of the presence of the jury that he had taken Xanax and drank alcohol when he made the statement. When he listened to the call, Clark stated that he did not hear any statements about the victim biting him. Because our analysis is the same regardless of the exact wording of the statement, we assume, without deciding, that he said "bit my face."

The trial court found that the statement was inadmissible under MCL 768.27c because the statute is a "tool" for the admission of hearsay statements proffered by the prosecution, not the defense. Even if we assume, without deciding, that the defense may move for the admission of a statement under MCL 768.27c, we conclude that the statement was not admissible under the statute. See *Gleason v Michigan Dept of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

MCL 768.27c provides, in relevant part, as follows:

(1) Evidence of a statement by a declarant is admissible if all of the following apply:

(a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.

(b) The action in which the evidence is offered under this section is an offense involving domestic violence.

(c) The statement was made at or near the time of the infliction or threat of physical injury. . . .

(d) The statement was made under circumstances that would indicate the statement's trustworthiness.

(e) The statement was made to a law enforcement officer.

(2) For purposes of subsection (1)(d), circumstances relevant to the issue of trustworthiness include, but are not limited to, all of the following:

(a) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.

(b) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive.

(c) Whether the statement is corroborated by evidence other than statements that are admissible only under this section.

We previously held, in construing MCL 768.27c, that "we must interpret the statute according to the Legislature's plainly expressed meaning, and we must apply the statute as written." *People v Meissner*, 294 Mich App 438, 446; 812 NW2d 37 (2011); see also *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008) (reiterating rules of statutory construction).

In first considering the factors listed under MCL 768.27c(1), we disagree that Clark's statement referring to the victim and defendant qualifies as a "narrat[ion], descri[ption], or expla[nation of] the infliction or threat of physical injury upon the declarant." MCL 768.27c(1)(a). The purpose of the statute is to provide for the admission of hearsay evidence in

domestic violence cases, meaning that the statement is being offered at trial to prove the truth of the domestic violence asserted. *Meissner*, 294 Mich App at 445, 445 n 1. In reading the plain language of MCL 768.27c(1)(a) with this purpose in mind, it is evident that the statute functions only as a means of admitting a hearsay statement, for its truth, that narrates, describes, or explains an act of physical violence or a threat of physical violence specifically *against the declarant*. See *id*. We reject defendant's claim that Clark's statement regarding the victim and defendant provides context or an additional description relevant to the act of violence that the victim allegedly committed on December 17, 2013.

Therefore, the trial court did not abuse its discretion in excluding the 911 call under MCL 768.27c. See *Lane*, 308 Mich App at 51.

### 2. MRE 803(2)

Defendant next contends that the statement was trustworthy because it constituted an excited utterance under MRE 803(2). Pursuant to MRE 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is "not excluded by the hearsay rule."

Although a caller's statement to a 911 operator would generally be considered hearsay, see MRE 801, a caller's statement may be admissible under MRE 803(2) depending on the circumstances of the call. See, e.g., *People v Hill*, 282 Mich App 538, 548; 766 NW2d 17 (2009), vacated in part on other grounds 485 Mich 912 (2009); *People v Slaton*, 135 Mich App 328, 334-335; 354 NW2d 326 (1984). Here, Clark's statements to the 911 operator regarding the alleged acts of violence that had just occurred arguably constitute statements "made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2).

However, for a statement "[t]o come within the excited utterance exception . . . , a statement must meet three criteria: (1) it must arise out of a startling occasion; (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion." *People v Straight*, 430 Mich 418, 424; 424 NW2d 257 (1988) (quotation marks and citation omitted; footnote omitted). Relevant to the third criterion is this Court's previous holding that "[o]ne of the requirements for the admission of an excited utterance is that the declarant appear to have had an opportunity to personally observe the matter of which he or she speaks." *People v Kent*, 157 Mich App 780, 788; 404 NW2d 668 (1987); see also *People v DeWitt*, 173 Mich App 261, 267; 433 NW2d 325 (1988). "The burden of establishing perception rests with the proponent of the evidence." *Kent*, 157 Mich App at 788.

Contrary to defendant's claims, neither the statement on the 911 call itself nor any other evidence in the lower court record demonstrates that Clark had an opportunity to personally observe the altercation between the victim and defendant on August 10, 2013, or any other incidents of violence between the victim and defendant. We are unconvinced that defendant's characterization of the circumstances of the August 10 episode provide sufficient evidence to conclude that Clark had an opportunity to personally observe that incident or any other interaction between the parties. Given this lack of evidence, we are doubtful that the statement concerning the victim's alleged acts against *defendant* was adequately related to the circumstances of the startling occasion, i.e., defendant's alleged acts against *Clark*, to fulfill the

standard of reliability on which the excited utterance exception is founded. See *Straight*, 430 Mich at 423-424.

Moreover, if Clark did not have personal knowledge of the victim's acts toward defendant, the only other possibility is that Clark learned about the incident from another source, which would mean that his statement in the 911 call constitutes hearsay within hearsay. MRE 805 provides that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." See also *People v Mesik (On Reconsideration)*, 285 Mich App 535, 538; 775 NW2d 857 (2009) ("Where multiple levels of hearsay are involved, all declarations made must not be hearsay or must fall within a recognized exception."). Defendant has provided no argument or authority that another hearsay exception applies to the proffered statements.

Therefore, for these reasons, the trial court's exclusion of the 911 tape under MRE 803(2) was not outside the range of principled outcomes. See *Lane*, 308 Mich App at 51.

### 3. CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE

Because the trial court did not err in concluding that the 911 call was inadmissible under the rules cited by defendant, his constitutional right to present a defense was not violated. "[A] criminal defendant has a state and federal constitutional right to present a defense." *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008) (quotation marks and citation omitted). "However, an accused's right to present evidence in his defense is not absolute," and it must give way to established rules of evidence and procedure as long as the rules "are not arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (quotation marks and citations omitted); see also *People v Yost*, 278 Mich App 341, 379-380; 749 NW2d 753 (2008); *People v Orlewicz*, 293 Mich App 96, 101-102; 809 NW2d 194 (2011).

Furthermore, the record confirms that defendant was able to present a vigorous theory of self-defense without the content of the 911 call. Through the exhibits admitted at trial, defense counsel's questioning of the witnesses, and defense counsel's closing argument, defendant emphasized the victim's violent acts during the August 10, 2013 incident and the extent of his own injuries. Thus, other evidence in the record provided a foundation for a claim of self-defense. Most significantly, the victim expressly admitted that she bit defendant's face during the incident. Thus, we find no basis for concluding that the preclusion of the 911 call violated defendant's right to present a defense. See *Carines*, 460 Mich at 763-764.

### III. EXPERT WITNESS TESTIMONY

Defendant contests the admission of two statements made by an expert on domestic violence—based on the expert's review of the police reports in this case and the preliminary examination transcript—that (1) the victim's behavior was consistent with that of a domestic violence victim and (2) defendant's behavior was consistent with that of a batterer and not a victim. We agree that some of the witness's statements constitute plain error, but we disagree that reversal is required in this case.

### A. ADMISSION OF TESTIMONY

## 1. STANDARD OF REVIEW

As defendant acknowledges, his challenge to the expert's testimony on appeal is different from the objection that he raised in the trial court. Accordingly, this issue is unpreserved, *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), and reviewed for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763.

## 2. ANALYSIS

Our Supreme Court considered the admissibility of battered woman syndrome testimony in *People v Christel*, 449 Mich 578; 537 NW2d 194 (1995). Expert testimony on battered spouse syndrome, and the specific behaviors associated with it, is admissible, "relevant[,] and helpful when needed to explain a complainant's actions, such as prolonged endurance of physical abuse accompanied by attempts at hiding or minimizing the abuse, delays in reporting the abuse, or recanting allegations of abuse." *Id*. at 580. "However, the expert may not opine whether the complainant is a battered woman, may not testify that [the] defendant was a batterer or guilty of the instant charge, and may not comment on the complainant's truthfulness." *Id*. In *Christel*, the Michigan Supreme Court expressly declined to address "whether or when the expert may testify about consistencies between the victim and an actual abuse victim." *Id*. at 591 n 23.

That same year, in *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995), the Michigan Supreme Court dealt with the similar issue of expert testimony concerning child sexual abuse accommodation syndrome. It held:

> Unless a defendant raises the issue of the particular child victim's post incident behavior or attacks the child's credibility, an expert may not testify that the particular child victim's behavior is consistent with that of a sexually abused child. Such testimony would be improper because it comes too close to testifying that the particular child is a victim of sexual abuse. [*Id*. at 373-374 (footnote omitted).]

In addition, the Court clarified:

> The credibility of the victim is attacked when the defendant highlights behaviors exhibited by the victim that are also behaviors within [the syndrome] and alludes that the victim is incredible because of these behaviors. The scope of the testimony, however, is again limited to the behavior at issue, and the expert may not testify about behavior manifestations that are not at issue. In other words, it does not matter how the behavior trait came into evidence. The expert may not proffer testimony of other behaviors unless the facts as they develop make the specific behavior relevant or if the defendant attacked the victim's credibility based on the behavior. [*Id.* at 374 n 13.]

Here, defense counsel continually challenged the victim's credibility by claiming that inconsistencies in her testimony and her lack of memory demonstrated that she was lying. Further, defense counsel accused the victim of not filing charges for certain events, implying that they were untrue; withdrawing her allegations in the past because they were not true; and telling the police not to respond when she called 911 for the August 10, 2013 incident. Thus, in

applying *Peterson* to testimony regarding battered spouse syndrome, it appears that the expert's testimony regarding the consistency between the victim's behavior in this case and other victims was permissible, given the defense's numerous challenges to the victim's credibility on the basis of behaviors that are consistent with battered spouse syndrome. See, e.g., *Christel*, 449 Mich at 580, 588, 592-595, 600; *People v Wilson*, 194 Mich App 599, 602-604; 487 NW2d 822 (1992).

But, the expert expressly testified that defendant's behaviors were not consistent with those of a victim of domestic violence. The expert also provided an additional, unresponsive answer to the prosecutor's question regarding whether defendant's actions were consistent with those of a victim, expressly stating that defendant's behaviors were consistent with those of a batterer. This testimony contravened the dictates of *Christel,* 449 Mich at 580, because the expert effectively opined, based on her comparison of the parties' behaviors, that defendant was a batterer and, therefore, guilty of the charge against him.[2]

Nevertheless, the record shows that this testimony did not affect defendant's substantial rights. See *Carines*, 460 Mich at 763. Mitigating testimony also was elicited from the expert— including that she was speaking generally about abuse victims; that she had no first-hand information about this case; that her opinions were based solely on what she had read; and that she could not say whether anyone was a victim of domestic violence in this case—which diminished the effect of her improper testimony. Additionally, the expert provided testimony that was helpful to defendant's claim that he acted in self-defense, stating that victims of domestic violence may use force or commit violent acts themselves.

Furthermore, the trial court provided a cautionary instruction concerning the expert's testimony:

> Experts are allowed to give opinions in court about matters they are experts on. However, you do not have to believe an expert's opinion. Instead, you should decide whether you believe it and how important you think it is. When you decide whether you believe an expert's opinion, think carefully about the reasons and facts she gave for her opinion and whether those facts are true. You should also think about the expert's qualification[s] and whether her opinion makes sense when you think about the other evidence in the case.

This instruction emphasized the jury's role as the fact-finder and clearly stated that the expert's opinions were not dispositive as to whether defendant committed the charged offense. "Jurors are presumed to follow their instructions . . . ." *People v Chapo*, 283 Mich App 360, 370; 770 NW2d 68 (2009) (quotation marks and citation omitted).

---

[2] Contrary to defendant's suggestion, the prosecution did not err in extensively discussing the expert's testimony during her closing argument and drawing inferences from the testimony. See *Christel*, 449 Mich at 599-600 ("Moreover, the prosecutor's closing statement, which invited the jury to believe that complainant was a battered woman on the basis of [the expert's] testimony, was not error in itself. Prosecutors are permitted to argue the evidence and make reasonable inferences in order to support their case theory.").

Finally, despite defendant's characterization of the record on appeal, the evidence of defendant's guilt was compelling. In addition to the victim's account of the August 10, 2013 incident, the jury heard testimony from other witnesses that corroborated portions of the victim's description. Moreover, the victim and other witnesses extensively testified regarding defendant's other violent acts. There also was testimony regarding defendant's previous abuse of the mother of his child. On this record, we cannot conclude that the challenged expert testimony affected the outcome of the proceedings, or that the error resulted in the conviction of an actually innocent defendant. See *Carines*, 460 Mich at 763-764.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his trial counsel rendered ineffective assistance when he failed to object to the expert's testimony. We disagree.

### 1. STANDARD OF REVIEW

Our review of defendant's ineffective assistance of counsel claim is limited to mistakes apparent on the record because he did not move for a new trial or a *Ginther*[3] hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.*, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

In order to prove that counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) defendant was prejudiced, i.e., "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed," and a defendant bears a heavy burden of proving otherwise. *Petri*, 279 Mich App at 410. Likewise, a "[d]efendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Id.* at 411.

### 2. APPLICATION

By challenging the victim's credibility, defense counsel opened the door to testimony that defendant now contests on appeal. However, challenges to the victim's credibility were consistent with defendant's self-defense claim. Counsel could reasonably have concluded that the potential benefit was worth the risk of opening the door to some possible damaging testimony. See *id.* at 410-411. Additionally, our review of the record confirms that much of the

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

expert testimony aided defendant's theory of the case, and raising an objection may have precluded the admission of that testimony. Thus, defendant has failed to rebut the presumption that defense counsel's performance was a matter of trial strategy, which this Court cannot second guess with the benefit of hindsight. See *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Defense counsel's performance in cross-examining the expert did not fall below an objective standard of reasonableness. *Vaughn*, 491 Mich at 669-671. Additionally, even if we assume, arguendo, that defense counsel's performance was deficient, there is not a reasonable probability that this alleged error affected the outcome of the proceedings for the reasons stated *supra*. *Id*.

## IV. CONCLUSION

Defendant has failed to establish that the trial court erred in excluding the content of the 911 call. Additionally, defendant has failed to establish that the challenged expert witness testimony was a plain error affecting his substantial rights, or that defense counsel's failure to object to the testimony constituted ineffective assistance.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Michael J. Riordan