# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEVIN ANTHONY BENVENUTO,

        Defendant-Appellant.

UNPUBLISHED
March 3, 2015

No. 318896
Wayne Circuit Court
LC No. 13-005469-FH

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree home invasion, MCL 750.110a(2), and larceny in a building, MCL 750.360. Departing from the sentencing guidelines, the trial court sentenced defendant to 5 to 20 years' imprisonment for the first-degree home invasion conviction, to be served concurrently with 2 to 4 years' imprisonment for the larceny in a building conviction.[1] We affirm defendant's convictions, but vacate his sentences and remand for resentencing.

This case arises from a home invasion and larceny occurring on June 5, 2013, in Gibralter. Complainant Kim Anucinski lived at a home on Meadow Lane with her husband – Anthony Siedlik – and her grandmother. Kim and Anthony had a close relationship with defendant and considered him a family member. On the night of June 3, 2013,[2] Kim and Anthony returned home to find that an iPad, jewelry, and a large coin bank had been taken from their bedroom. Kim and Anthony suspected that defendant was involved in the theft because he knew where Kim kept the jewelry and knew the entry code to the keypad lock on the front door.

---

[1] Defendant was initially charged with second-degree home invasion, MCL 750.110a(3), rather than first-degree home invasion. The prosecution added the first-degree charge after learning at the preliminary examination that complainant Kim Anucinski's grandmother was present in the home during the invasion.

[2] While defendant was charged only for the home invasion and larceny that occurred on June 5, 2013, the trial court granted the prosecution's motion to admit evidence concerning the events of June 3 and 4, 2013, under MRE 404(b)(1). Defendant does not challenge this ruling.

The couple confronted defendant's friend Craig Lawson about the incident the next day. That day, Lawson came to Kim and Anthony's home and returned some of the stolen jewelry, along with a toolbox that had also been taken in the June 3, 2013, home invasion.

While returning home from work on June 5, 2013, Kim witnessed a man dressed in black emerge from the front door of her house. She and Anthony drove through their neighborhood following the man. When they saw his face, they recognized him as defendant. During Kim and Anthony's subsequent chase of defendant, he dropped the stolen toolbox which contained some of the same jewelry that Lawson returned to Kim the night before. Kim and Anthony caught up with defendant at a gas station where he was eventually arrested.

The prosecution named Lawson on its witness list and defendant filed a motion requesting that the trial court admit evidence of Lawson's prior misdemeanor larceny convictions. The trial court denied the motion, finding that Lawson's prior convictions constituted propensity evidence under MRE 404(b)(1).

Lawson ultimately failed to appear at trial. Defense counsel requested that the trial court give a missing witness instruction regarding Lawson's testimony. Noting the prosecution's efforts to produce Lawson, the trial court denied the request.

## I. PRIOR BAD ACTS EVIDENCE

Defendant first argues that the trial court's exclusion of Lawson's prior misdemeanor larceny convictions violated his right to present a meaningful defense. "Whether a defendant was denied his constitutional right to present a defense is a question of law we review de novo." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

As an initial matter, we note that this issue is moot in light of the fact that Lawson never testified at trial. "An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004). Defendant's ability to cross-examine Lawson regarding his prior bad acts and impeach his credibility became irrelevant in Lawson's absence. Nevertheless, we conclude that the trial court's ruling did not violate defendant's right to present a defense or constitute an abuse of discretion under MRE 404(b)(1).

"A criminal defendant has a right to present a defense under our state and federal constitutions." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006), citing US Const, Ams VI, XIV; Const 1963, art 1, §§ 13, 17, 20. However, this right is not absolute. *People v Unger (On Remand)*, 278 Mich App 210, 250; 749 NW2d 272 (2008). "A defendant's interest in presenting … evidence may thus 'bow to accommodate other legitimate interests in the criminal trial process.' " *Id*. (citation omitted). The defendant may introduce evidence of third-party guilt when that evidence is inconsistent with, and raises a reasonable doubt about, the defendant's guilt. *Holmes v South Carolina*, 547 US 319, 327; 126 S Ct 1727; 164 L Ed 2d 503 (2006). But such evidence should be excluded where it does not sufficiently connect the third party to the crime, such as where the evidence is speculative or remote, where it does not tend to prove or

disprove a material fact in issue, where it has no effect other than to cast a bare suspicion upon another person, or where it raises a conjectural inference regarding the commission of that crime by a third party. *Id.* at 327-328. "Before such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party." *Id.*, (citation omitted). This Court has also held that evidence tending to incriminate another person is admissible if it creates more than a mere suspicion that someone else committed the offense. *People v Kent*, 157 Mich App 780, 793; 404 NW2d 668 (1987); see also *People v McCracken*, 172 Mich App 94, 98-99; 431 NW2d 840 (1988) (upholding the exclusion of evidence that "would require speculation" to suggest that the defendant was innocent).

Lawson's return of the jewelry and toolbox to Kim and Anthony on June 4, 2013, suggests that he may have been involved with or aware of the home invasion on June 3, 2013. But defendant was charged only for the June 5, 2013, home invasion and larceny, and there is no evidence connecting Lawson to those offenses. Kim and Anthony testified that defendant was the person they saw dressed in black, running toward the gas station, dropping the twice-stolen toolbox containing Kim's jewelry. Defendant knew where the couple lived and was familiar with the code necessary to unlock the keypad on their front door. Because Lawson's connection to the charged offenses was merely speculative, the evidence regarding his prior misdemeanors was properly excluded. *Holmes*, 547 US at 327-328; *McCracken*, 172 Mich App at 98-99.

Defendant also contends that the trial court's ruling was contrary to MRE 404(b)(1). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *King*, 297 Mich App at 474, quoting *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998). MRE 404(b)(1) prohibits the admission of prior bad acts as improper character evidence. The rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

The rule applies to all bad acts evidence, whether it concerns a defendant, a witness, the victim, or some other person. *People v Catanzarite*, 211 Mich App 573, 579; 536 NW2d 570 (1995).

"To be admissible under MRE 404(b), bad-acts evidence must satisfy three requirements: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; and (3) the probative value of the evidence must not be substantially outweighed by unfair prejudice." *People v Kahley*, 277 Mich App 182, 184-185; 774 NW2d 194 (2007). Defendant does not argue that evidence of Lawson's prior misdemeanor larceny convictions is relevant to demonstrate motive, opportunity, intent, preparation, or for any other proper purpose under MRE 404(b)(1). Instead, defendant asserts that the evidence is admissible to show that Lawson was the person responsible for the home invasion and larceny occurring on June 5, 2013. As the trial

court found, this is "just plain propensity evidence[.]" It would have shown only that Lawson acted in conformity with his prior convictions by committing the June 5, 2013, home invasion and larceny in a building. The trial court did not violate defendant's right to present a defense or abuse its discretion in excluding the proffered evidence of Lawson's prior bad acts.

## II. MISSING WITNESS INSTRUCTION

Defendant next argues that the trial court erred in refusing to instruct the jury that it could infer that Lawson's testimony would have been detrimental to the prosecution based on the prosecution's failure to produce him as a witness. This Court reviews a trial court's determination of due diligence and the appropriateness of a missing witness instruction for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 388-389; 677 NW2d 76 (2004). Absent clear error, a finding regarding due diligence in producing a witness is a factual finding that will not be set aside on appeal. *People v Briseno*, 211 Mich App 11, 14; 535 NW2d 559 (1995).

A missing witness instruction under M Crim JI 5.12 may be appropriate when the prosecution fails to produce an endorsed witness who has not been properly excused. *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003). MCL 767.40a(3) requires that the prosecutor, upon the defendant's request, exercise due diligence in producing the listed witness at trial. *Perez*, 469 Mich at 418-419. "A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence. If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Eccles*, 260 Mich App at 388-389 (citations omitted); see also, M Crim JI 5.12.[3]

"The test [regarding due diligence] is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). Hence, "due diligence" is the attempt to do everything reasonable to obtain the presence of a witness, not everything possible. *Eccles*, 260 Mich App at 391.

In requesting the missing witness instruction, defense counsel conceded that he was "certainly not suggesting" that the prosecution failed to make an effort to produce the witness, and acknowledged that the prosecutor was "kind enough" to subpoena Lawson for defendant. By this acknowledgment, defendant waived his right to challenge the trial court's ruling. A waiver is an intentional relinquishment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation omitted). Because defendant disclaimed any argument that the prosecution failed to exercise due diligence in producing Lawson, he waived his right to challenge the trial court's

---

[3] Although the prosecution named Lawson as an endorsed witness pursuant to MCL 767.40a(3), defendant's counsel also requested that the prosecutor subpoena Lawson on defendant's behalf.

ruling that the prosecution did, in fact, exercise due diligence on appeal. However, even if defendant had not waived his claim, he failed to show any error in the trial court's due diligence findings.

Defendant acknowledges that the prosecution subpoenaed Lawson on defendant's behalf. Similarly, defendant does not dispute the prosecution's representation that Lawson attempted to appear for trial, but went to the wrong room:

> [*The prosecutor*]: My only thing with this is he was served. He did appear last Thursday [during the first day of trial], although there was a mistake. For some reason he went up to my office. He was on 11 and one of the secretaries never thought I might be in court.
>
> But I did have Sergeant Hammar [of the Gibralter Police] go back out again this weekend and he personally served Mr. Lawson.

The prosecution suggests that Lawson may have been subpoenaed twice, and that he was served with a subpoena at least once on the weekend immediately before he was to appear at trial. There is no evidence in the record that the prosecution waited too long to locate Lawson, see *People v Dye*, 431 Mich 58, 67-70; 427 NW2d 501 (1988), and Lawson's appearance on the first day of trial implies that the prosecution successfully contacted Lawson at an earlier date and made him aware that he would be called as a witness. Defendant makes no argument regarding how the prosecution's efforts were insufficient under the circumstances of this case. Defendant may not simply announce his position and leave it to this Court to make his argument for him. *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Because defendant has not demonstrated that the prosecutor failed to exercise due diligence, the trial court did not abuse its discretion in rejecting defendant's request for a missing witness instruction.

### III. ALLEGED SENTENCING ERRORS

### A. UPWARD DEPARTURE

Defendant first challenges the trial court's upward sentencing departure. This Court reviews a trial court's reasons for a departure from the sentencing guidelines for clear error, while, "[t]he conclusion that a reason is objective and verifiable is reviewed as a matter of law." *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). Whether the reasons for the departure are substantial and compelling is reviewed for an abuse of discretion, as is the amount of the trial court's departure. *People v Babcock*, 469 Mich 247, 264-265; 666 NW2d 231 (2003). "A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *Smith*, 482 Mich at 300.

"Under MCL 769.34(3), a minimum sentence that departs from the sentencing guidelines recommendation requires a substantial and compelling reason articulated on the record." *Smith*, 482 Mich at 299. The facts supporting the reason for departure must be objective and verifiable, "of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court's attention." *Id*. Facts are objective and verifiable when they are based on actions or occurrences external to the minds of those involved in the decision, and are capable of being confirmed. *People v Horn*, 279 Mich App 31, 43 n 6; 755 NW2d 212 (2008). The departure

should also be proportionate to the seriousness of defendant's conduct and his criminal history. *Smith*, 481 Mich at 299-300. Importantly, "[t]he trial court may not base a departure 'on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the record . . . that the characteristic has been given inadequate or disproportionate weight.' " *Id*. at 300, quoting MCL 769.34(3)(b).

Defendant asserts that the trial court relied on "impermissible factors as a basis for the departure," including defendant's possible involvement in the home invasion on June 3, 2013, for which he was not charged. However, a trial court may consider a defendant's involvement in other criminal activity in its sentencing decision so long as the defendant had an opportunity to refute that information. See *People v Coulter (After Remand)*, 205 Mich App 453, 456-457; 517 NW2d 827 (1994) (a court may consider uncharged offenses in making a sentencing departure, "provided the defendant is given an opportunity to test the accuracy of the factual allegations."); *People v Welsh*, 173 Mich App 467, 469-470; 434 NW2d 162 (1988).

After the prosecution elicited testimony regarding defendant's suspected involvement in the June 3, 2013, home invasion, defense counsel cross-examined Kim and Anthony in a manner suggesting that Lawson was responsible for the initial offense, emphasizing the fact that Lawson was the person who returned the stolen items. Defendant also presented an officer from the Taylor Police Department who testified that defendant had no iPad, jewelry, or toolbox with him on the night of June 3, 2013. Defendant had adequate opportunity to rebut evidence of the uncharged offense. *Welsh*, 173 Mich App at 470. The trial court thus did not err in considering the uncharged offenses.

Next, defendant asserts that the trial court impermissibly relied on his decision to maintain his innocence at sentencing, which the trial court improperly characterized as a lack of remorse. Defendant is correct that a trial court may not base its sentence on an individual's refusal to admit guilt, *People v Yennior*, 399 Mich 892; 282 NW2d 920 (1977), but a lack of remorse can be considered in determining a defendant's potential for rehabilitation, *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995). The trial court specifically tied defendant's lack of remorse to its finding that rehabilitation was unlikely:

> And from reading the presentence report and, from listening to the defendant's few words here today, its—I, I am just not at all persuaded that he's, he's remediable or that he feels any remorse now.

The trial court was not penalizing defendant for maintaining his innocence, but instead considering whether, given his lack of contrition, defendant was likely to reoffend in the future. This was not an improper consideration.

The trial court's two most significant reasons for the sentencing departure were: (1) the sentimental value of the items taken; and (2) the psychological injury to Kim and Anthony. Defendant argues that these factors were accounted for in the sentencing guidelines and therefore should not have been deemed substantial and compelling reasons for departure. We agree.

A departure may not be based on an offense or offender characteristic that is already accounted for in the sentencing guidelines, unless the trial court makes a specific finding that the characteristic was given inadequate or disproportionate weight. *Smith*, 482 Mich at 302 n 21; *People v Abramski*, 257 Mich App 71, 74; 665 NW2d 501 (2003). Here, the trial court chose to depart from the sentencing guidelines based on factors that could have been evaluated in the offense variable (OV) scoring. For instance, the trial court found that the sentimental value of the stolen property made the larceny offense more egregious, "like kicking the victim in the teeth[.]" This finding warranted a 10 point score under OV 16. See MCL 777.46(1)(b) (assigning 10 points for property having "significant historical, social, or sentimental value"). Rather than assess 10 points, the trial court assessed only five points based on the property's monetary value pursuant to MCL 777.46(1)(c), setting aside the sentimentality characteristic as a reason for the sentencing increase. According to defendant, the sentimentality characteristic is "accounted for" by the guidelines because the trial court *could have* scored OV 16 for this factor, even though it did not do so. Defendant is correct.

This Court demonstrated the manner in which OVs "account for" the characteristics of an offense in *People v Young*, 276 Mich App 446, 450-451; 740 NW2d 347 (2007). In *Young*, the trial court reduced the defendant's minimum sentence in part because the knife the defendant used to commit robbery was small and, in the view of the trial court, less dangerous. *Id.* at 450. Rejecting the trial court's reasoning, this Court held that the size of the knife was not a valid reason for departure because MCL 777.31 (OV 1) and MCL 777.32 (OV 2) permitted an assignment of points based on the use of the knife and thus already "accounted for" the weapon:

> In order to calculate the recommended minimum sentence range for armed robbery, the trial court was first required to score defendant's prior record variables (PRVs) and offense variables (OVs). MCL 777.21(1)(a) and (b). OV 1 and OV 2 of the sentencing guidelines address a defendant's use of a weapon. See MCL 777.31 and MCL 777.32. Hence, the guidelines clearly account for the use of a weapon during the commission of an offense. [*Id.* at 450.]

Use of the knife, however, could *become* a substantial and compelling reason justifying a departure if the trial court first found that this characteristic was given inadequate or disproportionate weight:

> Under MCL 769.34(3)(b), a trial court may not "base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." Thus, as a threshold matter, before the trial court could even consider whether the size of the knife constituted a substantial and compelling reason to depart downward from the minimum sentence range, the trial court first had to conclude that the use of the knife was given inadequate or disproportionate weight under the sentencing guidelines. Because the requirements of MCL 769.34(3)(b) are stated in terms of the weight accorded a particular offense or offender characteristic under the sentencing guidelines, before a trial court can determine whether that characteristic was given inadequate or disproportionate weight, the trial court

must determine how that characteristic affected the defendant's minimum sentence range. Thus, in order to find that the use of the knife was given inadequate or disproportionate weight, the trial court first had to determine how many points were scored under the guidelines for defendant's use of a knife and then determine what effect, if any, those points had on the recommended minimum sentence range. [*Id*. at 450-451.]

In essence, *Young* set forth the steps that the trial court should have followed in this case: (1) consider whether the characteristic is "accounted for" in the points required by a particular OV; (2) determine "what effect, if any" these points have on the defendant's minimum sentencing range; and (3) if a departure is still necessary, render factual findings regarding how the characteristic is given inadequate or disproportionate weight in the OV score, thereby justifying the departure. *Id*. at 450-451; see also *Smith*, 482 Mich at 302 n 21 (noting that the trial court should have addressed the defendant's exploitation of the victim's vulnerability under OV 10 before relying on that characteristic as a reason for departure).

## B. OV 16

Defendant contends that the scoring of OV 16 accounts for the sentimental value of the stolen property. OV 16 addresses property obtained, damaged, lost or destroyed. MCL 777.46(1). As explained, the trial court assessed only five OV 16 points based on the monetary value of the stolen items, even though it could have assessed 10 points for the property's sentimental value. See MCL 777.46(1)(b) and (1)(c). Without addressing this issue, the trial court then relied on this characteristic as a reason for the upward departure:

And then there is the additional factor that the, the goods that were stolen in many cases had extraordinary sentimental value. I mean I think the, the hurt that—the psychic damage to a victim under these circumstances is far more than if he had stolen tens of thousands of dollars worth of just in personal items and stereo equipment, or flat screen TVs, or even furniture. I mean he stole things that had very little real value monetarily but extraordinary emotional value and sentimental value. And I think that just is—it's like kicking the victim in the teeth after the crime has been committed. It's just inexplicable.

Pursuant to *Young, supra*, the trial court could depart based on the sentimentality characteristic only if it first determined how many points could have been assessed under OV 16, considered the impact of these points on the minimum sentence range, and then found that this score gave inadequate or disproportionate weight to the characteristic. The trial court's failure to take these steps was an abuse of discretion.

Notably, the five points that were assessed for OV 16 were not even added in the calculation of the total OV level. On the record at sentencing, the parties agreed that OV 12 should be scored at zero and OV 13 scored at 5 points making "the total OV number 5. OV level is a one." The error in failing to add the five points for OV 16 to the OV total is significant. With another five points, defendant's corrected score would be 10 points in total resulting in an OV level II, with a minimum sentence guidelines range of 30 to 50 months. MCL 777.63.

Remand for resentencing is warranted for this additional reason, because the scoring error alters the appropriate guideline range. *People v Francisco*, 474 Mich 82, 89-92; 711 NW2d 44 (2006).

## C. OV 4

Defendant further argues that OV 4 accounts for the psychic trauma suffered by Kim. OV 4 addresses psychological injury to a victim. MCL 777.34(1). It provides that 10 points should be assessed if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Ten points may also be assigned "if the serious psychological injury may require professional treatment," although "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). At sentencing, the prosecutor read a letter from Kim, in which she requested that defendant be subject to "the maximum sentence on both counts" due to the "pain" she was feeling at having lost items associated with her recently deceased mother. Due to her long relationship with defendant, Kim further stated she was "taking this [incident] so hard because I never thought that someone I loved could betray me the way [defendant] did." The prosecutor stated that Kim had gone to multiple pawn shops to search for her mother's jewelry, "and she's very disappointed at what, what transpired here." The trial court explicitly relied on this "psychic damage" in its departure:

> The crime that [defendant] committed in this case is particularly vile. I mean more vile even than the sort of run of the mill home invasion one cases because the victims in this case were people that cared for him and tried to help him and almost parented him. People who trusted him. And he violated that trust in some very fundamental ways, and, and then sort of came back for a return, a return visit to resteal [sic] the things that had been returned. And I think that that just adds a level of culpability that is simply not accounted for in the sentencing guidelines.

This Court has held that "a victim's statements about feeling angry, hurt, violated and frightened" support a 10 point assessment under OV 4. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012). Kim's letter expressed similar feelings, and may have warranted 10 OV 4 points. Yet, the trial court assessed zero points. The trial court moved immediately to a departure, without considering whether a 10 point score would have accounted for the psychological harm, what impact this would have on defendant's sentencing, or explaining how this sentencing range would be disproportionate or inadequate. Thus, the trial court abused its discretion in finding that Kim's psychological harm was a substantial and compelling reason to depart from the sentencing guidelines.

## D. OV 5

OV 5 relates to the psychological harm to a victim's family member. MCL 777.35(1). Defendant argues that OV 5 accounts for any emotional harm to Kim's husband Anthony. OV 5 should be scored at 15 if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). Subsection two states that 15 points should be scored "if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.35(2). Speaking of "the victims in this case," the trial court apparently

considered the psychological harm to Anthony, in addition to the harm to Kim. But the trial court assessed zero points under OV 5. Again, it departed on this basis without going through the steps articulated in *Young*, *supra*. The trial court abused its discretion in this regard.

In sum, the trial court could rely on the uncharged offenses and lack of remorse as a basis for departure, but could not rely on the sentimental value of the stolen items or the psychological harm to the complainants without first completing the analysis described in *Young*, *supra*. Under these circumstances, the reviewing court "must determine whether the trial court would have departed to the same degree" based on the proper substantial and compelling reasons alone. *Babcock*, 469 Mich at 260. It is unclear in this case whether the trial court would have departed to the same degree without consideration of the latter two factors. We therefore "remand the case to the trial court for resentencing or rearticulation of its substantial and compelling reasons to justify its departure." *Id*. We also remand for resentencing due to a failure to properly add the five points assessed for OV 16 to the total OV score.

## E.  RESENTENCING BEFORE A NEW JUDGE

Finally, defendant urges that resentencing should take place before a different judge. We disagree. In this case, the trial court's errors involved an issue of law, i.e., a mistaken application of the sentencing guidelines, not expression of any improper personal bias against defendant. *People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997). There is no indication that the sentencing judge would have difficulty setting aside his erroneous application of the law. The factors the trial court cited as making this case "particularly vile," and worthy of a departure may, in any case, require additional OV points and a lengthier sentence when properly scored on remand.

We affirm defendant's convictions, but vacate his sentences and remand for resentencing under properly scored guidelines. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly