# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

DEMETRIUS WILLIAM EDWARDS,

   Defendant-Appellant.

UNPUBLISHED
March 10, 2015

No. 318000
Wayne Circuit Court
LC No. 13-000935-FC

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

BRYANT LAMONT ROYSTER,

   Defendant-Appellant.

No. 318025
Wayne Circuit Court
LC No. 13-000935-FC

Before: MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In these consolidated cases, defendants, Demetrius William Edwards and Bryant Lamont Royster, appeal their bench trial convictions arising out of their involvement in a robbery and homicide at the Eastland Mall in Harper Woods. Both were convicted of first-degree felony murder, MCL 750.316(1)(b), with Edwards acting as the principal, and Royster as the aider and abetter.[1] Besides this, Edwards was also convicted of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm, MCL 750.224f. Edwards faces prison terms of natural life without parole, two years, and one to five years, respectively, for his first-degree felony-murder, felony-firearm, and felon in possession convictions. Royster likewise received the mandatory prison sentence of natural life

---

[1] Defendants were also charged with and acquitted of first-degree premeditated murder, MCL 750.316(1)(a).

-1-

without parole for his first-degree felony murder conviction. Edwards appeals his convictions and sentences in Docket No. 318000, Royster appeals his in Docket No. 318025. Both appeals are by right, and in both cases we affirm.

## I. BACKGROUND

This case is the latest and—with life sentences—now the last of these young defendants' routine disrespect for the rule of law.[2] The facts of this case stretch back to the evening of September 24, 2010. On that day, Edwards was free on a GPS tether to "settle [his] affairs," having been sentenced just the day before for a prior armed robbery conviction. Apparently, those affairs included a trip to the Eastland Mall with Royster and two acquaintances, Devante Smith and Jaisaun Holt.

Around 8:30 p.m., the decedent, Cedell Leverett, was sitting in the driver's seat of his Mercedes parked in the valet area of Eastland Mall. Another car was parked nearby. Deborah Gaca observed Edwards get out of the other car, and run towards the valet area in a crouched position. Edwards was holding a gun. Royster, who was standing outside the driver's side of the other car, yelled, "Pop him, pop that mother f***** good." Edwards then fired four shots into the Mercedes at close range, killing Leverett. Edwards ran back to the other car, which was backing out, and fled the scene. Police subsequently arrived and found over $3,000 in the decedent's pocket. Corroborating Edwards's and Royster's presence at the Eastland Mall during this time were a surveillance video and Edwards's tether records.

Holt confirmed in a police interview (which he later disavowed at trial) that Edwards intended "to get [the decedent's] glasses and he hit him," before Royster whisked them away in the car. Although Holt also elaborated that Edwards claimed to have shot the decedent after the decedent brandished a firearm, police found no weapons in or around the Mercedes or on the decedent's person during their investigation immediately after the shooting. Devante claimed the others left the Eastland Mall without him.

Deonte Smith, Devante's brother, provided further information regarding the shooting during a police interview. Deonte stated that he saw defendants, Holt, and his brother (Devante) at a high school football game sometime after the shooting. At the game, "they" told Deonte they had seen a man walking around the Eastland Mall with a diamond watch and $12,000 to $15,000 cash in his pocket. Holt kept tabs on this man and reported to Edwards by phone. Edwards "bragged" to Deonte that he tracked the man outside and tried to rob the man of his

---

[2] Edwards's previous convictions include armed robbery, felony-firearm, and carrying a concealed weapon, MCL 750.227. Royster's previous convictions include: two counts of second-degree fleeing and eluding, MCL 257.602a(4)(a); intent to deliver less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(4); felony-firearm; and assault with intent to murder, MCL 750.83.

watch, but because the man was reaching for something, Edwards shot him. Others at the football game told Edwards he was stupid for not getting anything.[3]

About a week after the shooting, a security officer at the Northland Mall in Southfield saw Edwards toss a gun under an SUV in the parking lot while fleeing a fight. Edwards was arrested at the scene. Royster was apparently arrested shortly thereafter. Subsequent tests of the gun revealed that this weapon had fired the shell casings and bullet fragments found in and around the Mercedes and inside the decedent at the Eastland Mall one week earlier. In addition, police interviewed another individual who had previously accompanied the decedent on the day of his death and whom the police found at the scene of the Eastland Mall after the shooting. That individual surrendered a diamond watch and sunglasses. Notably, the decedent's daughter saw the decedent wearing a diamond watch and sunglasses earlier that same day.

The case subsequently proceeded to trial at the conclusion of which the court made its findings on the record. As noted, the court acquitted defendants of first-degree premeditated murder, but found them guilty of the offenses at issue. Defendants were sentenced, and this appeal followed.

## II. DOCKET NO. 318000 – EDWARDS

Edwards raises a myriad of issues and has also filed a Standard 4 brief, mirroring almost entirely the issues presented in his primary brief. For the reasons set forth below, none of Edwards's assignments of error merits reversal of his convictions.

### A. RIGHT TO A PUBLIC TRIAL

In both his principal and Standard 4 briefs, Edwards claims for the first time that he was denied his right to a public trial when the trial court "arbitrarily evacuated" the courtroom during his preliminary examination. "[A] defendant's right to a public trial is subject to the forfeiture rule articulated in *People v Carines* [460 Mich 750; 597 NW2d 130 (1999)] . . . ." *People v Vaughn*, 491 Mich 642, 646; 821 NW2d 288 (2012). Thus, for Edwards to prevail on this unpreserved issue, he must show plain error affecting his substantial rights, i.e., outcome determinative error. To warrant reversal, such error must result in the conviction of an actually innocent defendant or otherwise "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 646, citing *Carines*, 460 Mich at 774.

Both the United States and Michigan Constitutions guarantee a criminal defendant the right to a public trial. US Const, Am VI; 1963 Const, art 1, § 20. This right is neither absolute nor self-executing, however. *Vaughn*, 491 Mich at 648, 653; see also *Waller v Georgia*, 467 US 39, 46; 104 S Ct 2210; 81 L Ed 2d 31 (1984). Indeed—contrary to Edwards's claim—absent an objection, a court is not required to consider alternatives as *Waller* otherwise prescribes.[4] See

---

[3] Because Deonte invoked his Fifth Amendment privilege not to testify at trial, his preliminary examination testimony was provided at trial.

[4] *Waller* sets forth a four-part test to justify a courtroom closure *when a defendant objects*: (1) the party who wishes to close the proceedings must show an overriding interest which is likely to

*Vaughn*, 491 Mich at 663-664; see also *People v Bails*, 163 Mich App 209, 211; 413 NW2d 709 (1987) ("If an objection had been made, other alternatives could have been considered. Given the lack of an objection, the short period the courtroom doors were locked, and the court's motive for ordering the closure, this Court finds the defendant's Sixth Amendment right to a public trial was not violated.").

Regardless—assuming this right extends to preliminary examinations in Michigan[5]—the crux of Edwards's challenge is that Deonte changed his testimony to implicate Edwards only after the trial court cleared the courtroom. Edwards claims the court's ostensible reason for doing so, i.e., that it was closing time, was constitutionally insufficient. This misrepresents what happened. Indeed, the trial court emptied the courtroom because "I'm advised that it should be safe . . . ." Our review of the record confirms that safety was of paramount concern. For starters, "a large police presence" was necessary at the preliminary examination in anticipation of "trouble." As it turns out, this was a prescient decision as several riots broke out in the courtroom during that examination. During these riots, spectators shouted profanity, police arrested at least one person and threatened jail time to others, and Edwards was accused of spitting on someone and exclaiming, "That's why the mother f***** is dead." It was for this reason that the trial court cleared the courtroom in two phases, waiting 10 to 15 minutes between each evacuation. Given the court's explanation before the second phase that "[w]e're going to try to clear the area so you don't get jumped by anybody where we don't have security cameras, or anybody there to help you," it is clear the court restricted access to the remainder of the preliminary examination not because of the lateness of the day, but based on advice "that it was safe" to do so.[6]

It is difficult to conceive of a more appropriate reason to restrict public access to a courtroom than this. To be sure, courts have properly restricted public access to a trial under far less demanding circumstances. See, e.g., *United States v Brazel*, 102 F3d 1120, 1155-1156 (CA

be prejudiced by a public trial, (2) the closure must be narrowly tailored to protect that interest, (3) alternatives to closure must be considered by the trial court, and (4) the court must make findings sufficient to support the closure. *Waller*, 467 US at 48.

[5] Whether this right extends to preliminary examinations in Michigan is unclear. See *In re Midland Publishing Co, Inc*, 420 Mich 148, 172-173; 362 NW2d 580 (1984) (holding that the public right of access to criminal trials conferred by the *First Amendment* "does not extend to preliminary examinations"), but see *Press-Enterprise Co v Superior Court*, 478 US 1, 10; 106 S Ct 2735; 92 L Ed 2d 1 (1986) (concluding "that the qualified First Amendment right of access to criminal proceedings applies to preliminary hearings *as they are conducted in California*") (emphasis added) and *Presley v Georgia*, 558 US 209, 213; 130 S Ct 721; 175 L Ed 2d 675 (2010) (suggesting without deciding the First and Sixth Amendment rights to a public trial may be coextensive). Nevertheless, it is unnecessary to settle this question today given both Edwards's failure to object and the clear threat to courtroom security posed in this case.

[6] In light of this, the court sufficiently complied with MCR 8.116(D)(1) (permitting a court to restrict access to court proceedings, *sua sponte*, provided no less restrictive means are available and the court explains its decision on the record).

11, 1997) (holding that the trial court's screening procedures did not violate the defendant's right to a public trial where spectators used "fix[ed] stares" to intimidate the witnesses); *United States ex rel Bruno v Herold*, 408 F2d 125, 127-128 (CA 2, 1969) (holding that where the trial court excluded spectators who "leaned forward and grinned and grimaced" at the witness, there was no Sixth Amendment violation because "there is no constitutional right to the presence of all public spectators who might desire to be present—or to the presence of such element as might be detrimental to an orderly trial uninfluenced by deterrents to truthful testimony."). This is because a trial court's close familiarity with the nature of the threats requires that appellate courts show great deference to the trial court's security procedures. See *United States v DeLuca*, 137 F3d 24, 34 (CA 1, 1998) ("prophylactic procedures of an entirely different nature may be required to safeguard against attempts to intimidate . . . witnesses in the performance of their courtroom responsibilities"), citing, among others, *United States v Childress*, 313 US App DC 133, 145; 58 F3d 693 (1995) ("[T]he trial court's choice of courtroom security procedures requires a subtle reading of the immediate atmosphere and a prediction of potential risks—judgments nearly impossible for appellate courts to second-guess after the fact."). Our deference is no great feat under these facts, especially considering that Edwards expressly approved of the court's decision to partially close the proceedings to the public the following day based on what had previously transpired. The trial court articulated sufficient justification to close the courtroom to the public. *Vaughn*, 491 Mich at 663-665. No error lies here.[7]

## B. VOLUNTARY WAIVER OF JURY TRIAL

Next, Edwards claims in his principal brief that the trial court failed to ascertain whether he voluntarily waived his right to a jury trial in accordance with MCR 6.402(B). We review this unpreserved issue for plain error affecting substantial rights. *Carines*, 460 Mich at 763. "In order for a jury trial waiver to be valid . . . it must be both knowingly and voluntarily made." *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009). A defendant's waiver is presumptively valid if the trial court has complied with MCR 6.402(B). *People v Mosly*, 259 Mich App 90, 96; 672 NW2d 897 (2003). That rule requires the trial court first to advise the defendant in open court of his right to a jury trial, and second to ascertain "by addressing the defendant personally" that the defendant understands that right and is relinquishing it voluntarily. MCR 6.402(B)

Here, after Edwards's counsel informed the court that his client wished to waive his right to trial by jury, the trial court asked Edwards directly whether he understood this right and "wish[ed]" to relinquish it. This is nearly identical to the trial court's colloquy in *People v Shields*, 200 Mich App 554, 560-561; 504 NW2d 711 (1993), which this Court deemed sufficient to secure a voluntary waiver.

Edwards's claim that he mistakenly believed his rights were somehow contingent on his co-defendant's plea changes nothing where he not only signed a jury waiver form, but his affidavit contradicts his colloquy with the trial court and nothing in the record otherwise supports

---

[7] Because Edwards's right to a public trial was not violated, there is no structural error requiring automatic reversal. *Vaughn*, 491 Mich at 665-666.

his claim.  See *People v Gist*, 188 Mich App 610, 612; 470 NW2d 475 (1991) (declining to consider an affidavit contesting the voluntariness of a jury trial waiver that was "contrary to what happened in open court").  Besides, he did not offer this proof below.  *People v Shively*, 230 Mich App 626, 628 n 1; 584 NW2d 740 (1998) ("The affidavit attached to defendant's appellate brief will not be considered by this panel to resolve this issue because it was not part of the lower court record.").  His claim is meritless.[8]

## C.  INCONSISTENT VERDICT

We likewise reject Edwards's claim—made in both briefs—that the trial court's verdict on his felony murder charge was inconsistent with its factual findings.  Because Edwards failed to raise this issue below, it is unpreserved and he must therefore show plain error affecting his substantial rights to prevail.  *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006); *Carines*, 750 Mich at 774.

Inconsistent verdicts, although permissible in jury trials, are problematic in bench trials. *People v Ellis*, 468 Mich 25, 26; 658 NW2d 142 (2003).  Put simply, they're not allowed because trial courts are "not afforded the same lenience" as juries.  *Id*.  Thus, if there is a factual inconsistency between the trial court's factual findings and its verdict, reversal is required. *People v Smith*, 231 Mich App 50, 53; 585 NW2d 755 (1998).

We conclude the trial court's verdict was perfectly consistent with its factual findings. As stated earlier, Edwards was acquitted of first-degree premeditated murder, but convicted of first-degree felony murder.  Although similar, the requisite intent of those offenses is not necessarily identical.  *People v Dykhouse*, 418 Mich 488, 496; 345 NW2d 150 (1984).  First-degree premeditated murder requires premeditation and deliberation.  *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).  First-degree felony murder, however, requires malice, which broadly includes the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.  *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007).

In rendering its verdict on the murder charges, the court explained:

> The Court finds both defendants not guilty of first-degree homicide premeditated murder.
>
> As to felony murder, Edwards, the Court finds Edwards guilty of felony murder for the following reasons: [h]is admission both to Deonte Smith of his attempt to rob the victim of his expensive watch and glasses.  The Court finds that by not direct and circumstantial evidence [sic].  The Court credits against the testimony of Ms. Gaca that she saw and identified Mr. Edwards go up to the side of the car and fire four shots.

---

[8] Edwards's reliance on *Cook* is inapposite, considering that the defendant's attorney in that case went against his client's wishes in waiving the right to a public trial.  *Cook*, 285 Mich App at 423.

The Court doesn't find that he went there to - - his intent - - I don't believe the he *initially* intended to kill him. I think that's just what happened during the circumstances.

The evidence corroborates this by the tether. The shooting was fired at close range. The still photos, the murder weapon which he had in his possession just a short time later, nine days later in Southfield.

The Court thinks that when you look *at the totality of all of the evidence through the testimony of all the witnesses and the expert testimony* that the People have met their burden for felony murder beyond a reasonable doubt. [Emphasis added.]

The finding that Edwards did not possess the intent to kill at first does not mean Edwards never had malice. To the contrary—in addition to the tether, the proximity of Edwards to the decedent during the shooting, and the surveillance photographs—the court expressly referenced the remaining evidence in finding the elements of felony murder satisfied, to wit: Deonte's statement of Edwards's intent to rob the decedent, the eyewitness's description of events and identification of Edwards as the assailant, testimony that the decedent was wearing an expensive watch and glasses on the day in question, and the forensic evidence related to the gun. All of this the trial court found credible, and we are in no position to upset that determination. MCR 2.613(C); *People v Vaughn*, 186 Mich App 376, 380; 465 NW2d 365 (1990).

In light of this, the court's characterization of the planned robbery as "creat[ing] a very high risk of death" is well supported and easily satisfies the requisite intent for first-degree felony murder. That the trial court found no initial premeditation or deliberation is not inconsistent with its verdict, and therefore offers Edwards no refuge.

## D. RIGHT TO NOTICE OF THE CHARGES

We next address Edwards's claim that his due process right to adequate notice was violated because the felony information did not disclose the requisite intent underlying the felony murder charge. While Edwards raises this issue in both briefs, he failed to raise it below thereby limiting our review to plain error affecting his substantial rights. *Carines*, 750 Mich at 774.[9]

"A defendant's right to adequate notice of the charges against [him] stems from the Sixth Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment." *People v Darden*, 230 Mich App 597, 600; 585 NW2d 27 (1998). "An information is presumed to be framed with reference to the facts disclosed at the preliminary examination." *People v Stricklin*, 162 Mich App 623, 633; 413 NW2d 457 (1987).

---

[9] Edwards's Standard 4 Brief misconstrues federal case law in contesting the preservation requirement of this issue. See *United States v Davis*, 306 F3d 398, 411 (CA 6, 2002) ("*unless the defendant can show prejudice*, a conviction will not be reversed where the indictment is challenged only after conviction . . . .") (Emphasis added.) This is no different than the *Carines* standard.

The felony information coupled with the preliminary examination was constitutionally sufficient to dispel the ignorance that Edwards claims was plaguing him below. With respect to felony murder, the information alleged that Edwards "did while in the perpetration or attempted perpetration of a larceny, murder one [sic] Cedell Leverett; contrary to MCL 750.316(1)(b)," punishable by [l]ife without parole." This fairly apprised Edwards of the nature of the offense as required by court rule and statute. See MCR 6.112(D) (requiring the information to set forth the notice required by MCL 767.45, in addition to the substance of the accusation and the applicable penalty, among other things), and MCL 767.45(1)(a) (requiring the information to contain "[t]he nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged."). Moreover, the facts presented at the preliminary examination mirror those presented at trial. They showed Edwards approaching the decedent in a crouched position and holding a gun with the intent to rob him. "Malice may . . . be inferred from the use of a deadly weapon." *Carines*, 460 Mich at 759. A gun is a dangerous weapon. See *People v Parker*, 417 Mich 556, 565; 339 NW2d 455 (1983). Accordingly, the felony information, framed with reference to this evidence, fairly apprised Edwards of the requisite intent of this offense.

Edward's argument that had he known that felony murder requires a malicious intent, he would have testified that he lacked malice when he shot the decedent, defies common sense. Although the information did not expressly contain a "malice" theory in support of the felony murder charge, the information for the first-degree premeditated murder charge explicitly alleged that Edwards acted "deliberately, *with the intent to kill* . . . ." (Emphasis added.) Malice includes the intent to kill. *Smith*, 478 Mich at 318-319. Even with this notice, Edwards elected not to testify.

In light of this, Edwards was fully apprised of the nature of the charges against him and his ability to defend against them was certainly not prejudiced.[10]

E. VIEWING THE CRIME SCENE

This brings us to the argument in Edwards's principal brief that the trial court twice improperly viewed the scene of the crime and denied him the right to confront Gaca when she accompanied the court to the scene. This issue first appears on the record during the second day of trial when the court indicated that the attorneys would accompany the court to the crime scene. Apparently, this was originally planned to occur without defendants present, for when defendants' attorneys subsequently indicated their clients' desire to attend this viewing, the court canceled the visit unless defendants "change[d] their mind." Subsequently, while delivering its factual findings, the trial court noted that there "was a[n] independent going to the scene of the crime with defense counsel and the officer-in-charge, but we were met with Ms. Gaca and to

---

[10] Edwards states conclusively that the absence of "malice" from the charging document undermined the judicial process. But his failure to provide any argument on this score renders this issue abandoned. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (a party abandons an issue by failing to brief it).

basically get the site of where she was and where the cars were [sic]." The court added that it "also went to the mall at approximately 10:30, 10:00, 10:30 p.m. at night to see what the night light looked like. And as I indicated earlier, you could see very well into the parking lot area. It was very well-lit."

As a preliminary matter, Edwards has waived any claim concerning both the court's first viewing of the scene and confronting the eyewitness there. His counsel was not only present during those events, but counsel additionally *agreed* on the two questions asked of Gaca, which pertained only to her vantage point during the shooting. Even more, Edwards's counsel *stipulated* that Gaca's testimony on this score be read into the record. See *People v McPherson*, 263 Mich App 124, 139; 687 NW2d 370 (2004) (a party waives appellate review when the conduct of the party or his counsel "invit[es] the error and fails to object"), citing *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000); see also *People v Riley*, 465 Mich 442, 448; 636 NW2d 514 (2001). Regardless, even if the issue were not waived, our review would be for outcome determinative error since Edwards failed to object to either visit or the alleged testimony below.[11] *Carines*, 460 Mich at 764-765 (a claim of constitutional error requires a contemporaneous objection to preserve it for appeal); see also *People v Broadnax*, 57 Mich App 621, 622-623; 226 NW2d 589 (1975) (defendant could not raise this issue for first time on appeal where, among other things, defense counsel participated in the judge's viewing of the scene and did not object).

With respect to the fact-finder's viewing of a crime scene, it is well established that when the fact-finder is the jury, the viewing constitutes a critical stage of a criminal proceeding which a criminal defendant has the right to attend with the assistance of counsel. *People v Kurylczyk*, 443 Mich 289, 296; 505 NW2d 528 (1993) (opinion by GRIFFIN, J.); *People v Kent*, 157 Mich App 780, 793; 404 NW2d 668 (1987), citing *People v Mallory*, 421 Mich 229, 244-248; 365 NW2d 673 (1984). However, Edwards has not cited—nor have we found—Michigan authority addressing the issue of a trial court's viewing of a crime scene in the absence of defendant or his counsel. Several federal courts have held, however, that the same principles apply. See, e.g., *United States v Walls*, 443 F2d 1220, 1222-1223 (CA 6, 1971) ("The principles applicable to a view by a judge sitting without a jury are not substantially different [than those applicable to a jury]"); *Payne v United States*, 697 A2d 1229, 1235 (DC, 1997), citing *Lillie v United States*, 953 F2d 1188, 1191 (CA 10, 1992) (finding the court's viewing of the crime scene, although

---

[11] Edwards claims *for the first time on appeal* that his counsel "went behind [his] back" in accompanying the court to the scene. Edwards offers nothing in his affidavit—let alone any offer of proof—to substantiate this charge, which is tantamount to accusing his lawyer of violating the Rules of Professional Conduct. See MRPC 1.4. Nor are we blind to the fact that while Edwards raises a myriad of ineffective assistance claims both in his principal and Standard 4 briefs (addressed later in this opinion), not one accuses defense counsel of misrepresenting his decision on this issue. Edwards did not even raise this point in his motion for new trial. This is not surprising considering that the day after the first visit, the court explained the trip to the scene in detail and counsel additionally stipulated in Edwards's presence to Gaca's testimony. Edwards uttered not a word. Absent more, then, we will not consider this reckless accusation further. *Kevorkian*, 248 Mich App at 389.

erroneous, was not prejudicial). Moreover, while the Confrontation Clause entitles a criminal defendant the right to a face-to-face meeting with witnesses appearing before the trier of fact, the right is not absolute, *People v Staffney*, 187 Mich App 660, 663; 468 NW2d 238 (1990), and is not as broad in scope as the right to be present at trial, *Mallory*, 421 Mich at 247.

Assuming the right to attend the viewing of the scene extends to bench trials, we find no error requiring reversal. In the first place, Edwards's counsel was present for the initial viewing by the court and Gaca. Moreover, counsel agreed to the two questions asked of Gaca and stipulated to her testimony. Those pertained to her location and whether she moved during the shooting. Her testimony that she only moved when the gunman ran towards the car, however, only damaged her credibility and helped Edwards. On this point, the trial court expressly found that Gaca stood 50 feet from the incident, rather than the 20 feet she claimed at trial. In view of this, Edwards's failure to raise this issue below smacks of harboring error as an appellate parachute. *People v Riley*, 465 Mich 442, 448; 636 NW2d 514 (2001). We will not tolerate such gamesmanship. But even if there were error, it certainly was not outcome determinative in light of the overwhelming evidence against Edwards. This included the evidence of Edwards's intent to rob the decedent, the forensic evidence linking Edwards's gun to the shooting, and the tether and surveillance video placing Edwards at the scene.

Likewise, even if the court's second viewing were improper, it did not violate Edwards's substantial rights. The court indicated that its only purpose was to confirm the lighting of the parking lot. That fact was of little consequence in light of the other incriminating evidence, especially the surveillance video, tether, and forensic evidence. Again, Edwards was not prejudiced, and, not surprisingly, he makes no claim that he was actually innocent or that this fundamentally affected the proceedings in an adverse way.

Before moving on, we note that Edwards relies on *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984), among other cases, to suggest that any error was structural and requires automatic reversal. Edwards ignores, however, that "every federal circuit court of appeals has stated, post-*Cronic*, that an absence of counsel at a critical stage may, under some circumstances, be reviewed for harmless error." *People v Murphy*, 481 Mich 919, 923; 750 NW2d 582 (2008) (MARKMAN, J., concurring), citing, among others, *Satterwhite v Texas*, 486 US 249; 108 S Ct 1792; 100 L Ed 2d 284 (1988), *Ellis v United States*, 313 F3d 636, 643 (CA 1, 2002) (absence of counsel at critical stage would require presumption of prejudice only if "pervasive in nature, permeating the entire proceeding"), and *United States v Lampton*, 158 F3d 251, 255 (CA 5, 1998) (applying harmless-error review when counsel was absent during adverse testimony). Our facts fall squarely in line with this authority and we see no compelling reason to deviate today. Reversal is not warranted.[12]

---

[12] Equally meritless is Edwards's pro se assertion that the case against him is "void" because the complaint was not recorded in the register of actions. The complaint appears in the lower court file and contains no deficiency. It is dated and signed by the magistrate, assistant prosecutor, and the complaining witness. Edwards does not claim any prejudice resulted, and, in any event, is not actually innocent as we have already explained. Any error was harmless. MCL 769.26; *People v Houthoofd*, 487 Mich 568, 591 n 38; 790 NW2d 315 (2010).

-10-

## F. INEFFECTIVE ASSISTANCE OF COUNSEL

We next address Edwards's host of ineffective assistance of counsel arguments. Because we previously denied Edwards's motions to remand for a *Ginther* hearing,[13] our factual review is limited to mistakes apparent on the record. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). We review the ultimate question of constitutionality de novo, however. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). To prevail, Edwards must show that his counsel's performance was objectively unreasonable and that counsel's deficiency was outcome determinative. *People v Pickens*, 446 Mich 298, 312; 521 NW2d 797 (1994).

Edwards initially argues in his principal brief that his trial counsel was ineffective for failing to interview Deonte before trial. See *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004) ("[t]he failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome."). Edwards bases this assertion on Deonte's affidavit—offered for the first time on appeal—disavowing his preliminary examination testimony incriminating Edwards. According to Edwards, had counsel interviewed Deonte, he could have exposed Deonte's lies to the court at trial. There are at least two problems with this argument.

First, Deonte refused to testify at trial. Thus, Edwards's assumption, i.e., that the trial court would have "heard from Smith that he was lying," has no basis. Tellingly, Edwards offers no argument about how his counsel's investigation would have altered Deonte's decision not to testify.[14] Second, even if Deonte would have recanted at trial, this would not erase his prior sworn testimony, which the prosecution would no doubt have presented as a prior inconsistent statement admissible for its *substantive* value. See MRE 801(d)(1)(A) (inconsistent prior statements made under oath and subject to the penalty of perjury are not hearsay); *People v Malone*, 445 Mich 369, 376-378; 518 NW2d 418 (1994) (statements that are not hearsay under MRE 801(d)(1) may be used as substantive evidence). It bears further emphasis that recantation testimony, like what Edwards proposes, is inherently "suspect and untrustworthy." *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). Indeed "[t]here is no form of proof so unreliable as recanting testimony." *Id*. at 559-560 (citation omitted). In light of this, even if the failure to investigate Denote were unreasonable, our confidence in the trial's outcome remains firm.

Edwards presents the remainder of his ineffective assistance arguments in his Standard 4 brief. This laundry list accuses defense counsel of failing to object to: (1) the felony information, (2) the closure of the courtroom during the preliminary examination, (3) the trial court's

---

[13] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[14] Although defense counsel cross examined Deonte at the preliminary examination, this does not necessarily tip the balance against Edwards. See, e.g., *Bryant v Scott*, 28 F3d 1411, 1419 (CA 5, 1994) ("assuming that Moore's cross examination was effective, that is not to say it could not have been improved by prior investigation.").

purported failure to comply with MCR 6.402(B), and (4) the trial court's second visit to the crime scene. As for the first three, we have already determined that each is devoid of merit. Any objection would therefore have been futile. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (defense counsel is not required to make objections destined to lose). And as for the fourth claim, even if there were error, it was not outcome determinative for the reasons already stated. Edwards therefore cannot establish ineffective assistance on any of these grounds.

All of his convictions stand.

## III. DOCKET NO. 318025 – ROYSTER

Like his codefendant, Royster also filed a principal and Standard 4 brief. Our review of both yields nothing to aid his cause.

## A. SUFFICIENCY OF THE EVIDENCE

First, Royster asserts that his mere presence at the Eastland Mall was insufficient to convict him of felony murder under an aiding and abetting theory. We review a challenge to the sufficiency of the evidence in a bench trial de novo. *People v Lanzo Const Co*, 272 Mich App 470, 473-474; 726 NW2d 746 (2006). "When reviewing a challenge of the sufficiency of the evidence in a bench trial, the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). A court's factual findings in a bench trial will not be set aside absent clear error. MCR 2.613(C).

Felony murder consists of three elements: (1) the killing of a human being, (2) with malice, and (3) while committing *or attempting to commit* a robbery, among other offenses listed in MCL 750.316(1)(b). *Smith*, 478 Mich at 318-319. A defendant is guilty of aiding and abetting a felony murder when he has the requisite malice, which need not be identical to the principal's. *People v Robinson*, 475 Mich 1, 14; 715 NW2d 44 (2006). Mere presence at the scene of the crime, even with knowledge of the principal's plan, is not enough to prove malice. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). Thus, Royster would be guilty of felony murder under an aiding and abetting theory if he:

> (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. [*People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003).]

Gaca's testimony easily satisfies the first two elements. She testified that Royster stood outside the driver's door of the vehicle from which Edwards emerged, holding a gun. As Edwards approached the decedent in a crouched position, Gaca heard Royster encourage Edwards to "Pop him, pop that motherf***** good," before Edwards accosted the decedent and fired four shots, killing him. Royster then drove the getaway car. This testimony shows both

Royster's encouragement of Edwards and his malicious intent, especially since only minimal circumstantial evidence is required to prove the latter. *Kanaan*, 278 Mich App at 622; see also *Carines*, 460 Mich at 761 (actions after the incident, including flight, may be considered when determining intent). And, while Royster urges us to discount Gaca's testimony as unreliable, that is a determination left solely to the trial court, which we will not—and cannot—revisit here. *Kanaan*, 278 Mich App at 619. Royster was not the mere innocent bystander he portrays himself to have been.

As for the third element, Royster ignores that while there was no evidence that neither he nor Edwards knew the decedent previously, evidence showed they had selected him as their target, i.e, an individual wearing an expensive watch and glasses in the driver's seat of an expensive car. This circumstantial evidence, in conjunction with Edwards's covert approach to the decedent and Royster's encouragement, must be construed in the light most favorable to the prosecution, and as such, is sufficient to prove their *attempt* to commit the underlying felony of robbery.

But even if this weren't enough, Deonte's incriminating testimony—which the trial court did not even consider in determining Royster's guilt—shows robbery was defendants' aim. Indeed, the primary purpose of Edwards's statement to Deonte was not to establish prior events potentially relevant to a later prosecution; it was to brag. There is no question that Edwards's hubris ran contrary to his penal interest. Accordingly, the statement was nontestimonial and admissible against Royster as a codefendant. See *People v Taylor*, 482 Mich 368, 378-379; 759 NW2d 361 (2008) (statements whose primary purpose are not to establish past events potentially relevant to a later prosecution fall outside the Confrontation Clause, are governed by MRE 804(b)(3) (certain statements subjecting a party to criminal liability are not excluded by the hearsay rule), and are admissible against a codefendant). Royster's conviction is well supported.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Royster's next argument is that counsel was ineffective for failing to subpoena exculpatory witnesses. We have already set forth the standard for ineffective assistance and will not revisit it here, except to note that because Royster's motion to remand in this Court was also denied, we must again confine our review to mistakes apparent on the record. *Snider*, 239 Mich App at 423.

Royster identifies only one instance in the record to substantiate his claim, specifically at sentencing when he noted a breakdown in communication with counsel that allegedly resulted in his counsel failing to do "a lot of things," including call witnesses. However, Royster specified none of the "things" counsel failed to do and identified no witnesses. Further, while Royster identifies only one witness on appeal, he offers no explanation, let alone offer of proof, as to how that witness would exculpate him. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (a defendant must establish a factual predicate to support a claim of ineffective assistance). In fact, the *only* information Royster provides about this putative witness is that he is in federal prison somewhere. It is certainly not our responsibility to flesh out this argument, *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001), especially where Royster makes no effort to explain how not calling a federal inmate affected the trial's outcome, *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013) (the decision to call witnesses is a matter of trial

strategy constituting ineffective assistance only if it deprives a defendant of a substantial defense affecting the proceeding's outcome).

## C. SECOND VIEW OF THE CRIME SCENE

Like Edwards, Royster also challenges the trial court's second viewing of the crime scene, with the added wrinkle of an alleged Confrontation Clause violation. This latter claim alleges in essence that the trial court functioned as a witness during its second viewing of the crime scene and should have been subject to cross examination. Royster lodged no objection on this novel theory (or on any other ground) below, and so we are looking for outcome determinative error that adversely affected the proceedings or resulted in the conviction of an innocent defendant. *Carines*, 460 Mich at 774. We see none.

As we said before, a criminal defendant has the right to be present at every stage of a proceeding and to confront the witnesses against him. *Kurylczyk*, 445 Mich at 296; *Staffney*, 187 Mich App at 663. At least on the former ground, the prosecution concedes error, and indeed, we agree that the trial court's second viewing of the crime scene was not only erroneous, but imprudent. But even assuming error on both grounds, Royster can't get around the mountain of incriminating evidence against him. On this score, besides our prior analysis, we would highlight again Royster's vulgar encouragement to Edwards, which eradicates any pretense of actual innocence especially considering that the trial court's second visit was to view the lighting in the parking lot. That is not enough to reverse.

## D. ROYSTER'S STANDARD 4 BRIEF

Royster's Standard 4 brief is a near carbon-copy subset of the issues his codefendant presents on appeal. These challenges include: (1) the violation of his right to a public trial; (2) the court's noncompliance with MCR 6.402(B); (3) the felony information's lack of proper notice; and (4) the two crime scene visits. As for the first three, Royster's failure to object yet again leaves us looking for plain error affecting substantial rights. For all the reasons explained previously, we can't find any. To the second point, we add that the court secured Royster's jury trial waiver in a colloquy substantively identical to the one with Edwards, and that we otherwise decline to consider Royster's affidavit for the same reasons we reject Edwards's. Accordingly, there is no ground for reversal where the court properly closed the courtroom during the preliminary examination, secured a voluntary waiver, and Royster's "complete[]" ignorance of the charges was dispelled by the felony information and preliminary examination. In addition, Royster's assertion that he would have testified but for this alleged error is at best dubious given that the *mens rea* was provided in the premeditated murder charge.

Regarding the crime scene visits, we conclude that Royster waived any challenge to the first visit and to any testimony Gaca offered where his counsel attended the visit without objection and stipulated to the recitation of Gaca's testimony into the record. *Riley*, 465 Mich at 448, citing, among others, *Carter*, 462 Mich at 215-216. But even if there were error, Gaca's comments at the scene only harmed her credibility. Moreover, as we have repeatedly concluded, the evidence of Royster's guilt absent these visits was clear and he is not actually innocent.

Finally, Royster tacks on an ineffective assistance of counsel claim, arguing that his lawyer should have objected to: (1) the transcription of Deonte's preliminary examination

testimony at trial; (2) the court's noncompliance with MCR 6.402(B); and (3) the "defective" felony information. Because none of these amounts to error, no objection was necessary. *Ericksen*, 288 Mich App at 201. Moreover, the trial court expressly declined to consider Deonte's testimony against Royster. What counsel was supposed to object to, then, is beyond us.

Affirmed.


/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello